**UNITED STATES of America,**
**Appellee,**

v.

**John Paul BOMMARITO,**
**Defendant-Appellant.**

**No. 214, Docket 75–1219.**

United States Court of Appeals,
Second Circuit.

Submitted Sept. 3, 1975.

Decided Oct. 8, 1975.

---

Richard G. Chosid, West Bloomfield, Mich., for appellant.

Frederick T. Davis, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John D. Gordan, III, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

After a non-jury trial in the Southern District of New York before Richard Owen, *Judge,* appellant was convicted of one count of conspiring to distribute methamphetamine, and to possess it with intent to distribute it, and of one count of possession and sale of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Appellant's principal contentions are that Wharton's Rule bars his conviction on the conspiracy count, that the evidence was insufficient to support conviction on either count, and that the Double Jeopardy Clause bars his conviction for conspiracy because he previously pleaded guilty to another narcotics conspiracy. Finding these and other arguments advanced by appellant to be without merit, we affirm.

The evidence presented at trial reveals that, in December 1973, one Luigi Ciraco flew to Miami to purchase methamphetamine for resale in the New York area. Through the efforts of one Louis Wolf,[1] a meeting between Ciraco and appellant was arranged. Appellant informed Ciraco that he could provide up to 10 pounds of the drug, but Ciraco decided to pur-

---

1. Wolf was indicted on the same two counts as appellant, but the court below granted a motion to dismiss the substantive count, and found him not guilty on the conspiracy count.

chase only one pound at a time because of his limited resources. Credit was arranged; the parties agreed that appellant would provide a pound of methamphetamine for a payment of $5,500 due after Ciraco resold the drug.

Shortly thereafter, the parties again met, and appellant gave the pound of methamphetamine to Ciraco. Upon returning to New York, Ciraco succeeded in selling about eight ounces of the drug to various purchasers. He remitted $1,500 of the proceeds to appellant in Miami, and kept the latter informed of the progress of his sales efforts. Those efforts soon ran into a major obstacle, however, as on March 8, 1974, Ciraco was arrested in Yonkers, N. Y., with eight ounces of the drug in his possession.

Ciraco then agreed to cooperate with agents of the Drug Enforcement Administration ("DEA"). On March 9, he telephoned appellant, and agreed to meet with him in Detroit to pay the rest of the money due for the pound of methamphetamine. The Detroit meeting took place on March 13. Ciraco was accompanied by DEA Group Supervisor Anthony Senneca, whom he introduced as a friend interested in purchasing drugs. The remaining $4,000 due on the pound of methamphetamine was paid to appellant, who then began negotiations with Senneca for sale of 10 pounds of the drug.

The following day an unidentified man delivered a pound of methamphetamine to the hotel room occupied by Ciraco and Senneca. At a further meeting between the pair and appellant, they agreed that the pound was to be the first installment of a sale of 10 pounds of methamphetamine to Senneca; the remaining nine pounds were to be delivered in New Jersey. After returning to New York Ciraco called a prearranged number in Detroit and left a message that the remaining nine pounds should not be delivered.

On March 25, Ciraco flew to Miami in the company of a DEA agent, met appellant, and paid him $5,000 for the pound delivered in Detroit. At the trial Ciraco testified about all his meetings with appellant, and the DEA agents testified about the meetings in which they participated.

## DISCUSSION

Appellant argues that his conviction on the conspiracy count is barred by Wharton's Rule, a doctrine of criminal law which, in its most recent formulation, provides that:

> "An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." 1 Anderson, Wharton's Criminal Law and Procedure § 89, p. 191 (1957).

Appellant cannot be prosecuted for conspiring with Ciraco to sell drugs, the argument continues, since the cooperation of both parties was essential to complete the substantive offense: the sale of the drugs.

We do not believe that appellant can thus rely on Wharton's Rule to bar his conviction for conspiring to violate the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* (the "Act" herein). After an extensive analysis of the history and policies underlying Wharton's Rule, the Supreme Court has recently concluded that the rule is merely "an exception to the general principle that a conspiracy and the substantive offense that is its immediate end do not merge upon proof of the latter" and that it "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Iannelli v. United States,* 420 U.S. 770, 782, 95 S.Ct. 1284, 1292, 43 L.Ed.2d 616 (1975).[2] The structure and legisla-

2. In *Iannelli v. United States, supra,* the Supreme Court held that Congress did not intend to allow Wharton's Rule to block a conviction for conspiring to violate § 803(a) of the Organized Crime Control Act of 1970, 18 U.S.C. § 1955, even though that section was not applicable unless five or more persons operated an illegal gambling business.

tive history of the drug abuse act provide persuasive evidence that, because of the special dangers which conspiracies to distribute controlled drugs pose to society,[3] Congress did intend that a conspiracy to violate the Act should constitute a separate crime in addition to the substantive offense.

■■■ Section 406 of the Act, 21 U.S.C. § 846, supplements the general federal conspiracy statute, and makes it a crime to conspire "to commit *any* offense defined in this subchapter." (Emphasis added). The all-inclusive language of § 846 is not accidental but rather is consistent with the Act's overall aim of strengthening remedies available against organized traffic in drugs while lessening penalties for possession of drugs for personal use. See H.R. Rep. 91–1444, 91st Cong., 2d Sess., pt. 1, 10–11 (1970), U.S. Code Cong. & Admin. News, 1970, p. 4566. Allowing prosecution for conspiracy under § 846 without the limitations imposed by Wharton's Rule is warranted by the Act's expressed purposes of "providing more effective means for law enforcement aspects of drug abuse prevention and control" and "providing for an overall balanced scheme of criminal penalties for offenses involving drugs." *Id.* at 1, U.S. Code Cong. & Admin. News, 1970, p. 4567. In view of Congress' obvious concern with the dangers posed by organized schemes

to distribute drugs,[4] and the careful consideration it gave to the Act's scheme of penalties, we believe that if it had intended to restrict the scope of § 846 through the application of Wharton's Rule, it would have done so explicitly.

■■■ Moreover, even if § 846 were subject to Wharton's Rule, the facts of this case would still not bring appellant within the scope of the rule's protection. The indictment charged that appellant and Ciraco participated in the conspiracy along with other unnamed co-conspirators, and there was ample evidence at trial to support the conclusion that, for example, the persons who made the actual deliveries of the methamphetamine sold by appellant were participants in the conspiracy.[5] Thus a basis exists for invocation of the "third party exception" to the rule. See *Iannelli v. United States, supra,* p. 775, 95 S.Ct. p. 1289. Since the conspiracy would encompass a greater number than the two persons required to complete the substantive offense of selling methamphetamine, Wharton's Rule would not bar the conviction. *United States v. Becker,* 461 F.2d 230, 234 (2d Cir. 1972), *vacated and remanded on other grounds,* 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208 (1974); *United States v. Benter,* 457 F.2d 1174, 1178 (2d Cir. 1972), *cert. denied,* 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 42 (1973). In addition, since the offenses which appel-

---

3. Wharton's Rule arose in, and has been primarily applied in, cases involving alleged conspiracies to commit offenses such as adultery, incest, bigamy, and dueling where "the immediate consequences of the crime rest on the parties themselves rather than on society at large," and where "the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert." *Iannelli v. United States,* at 782, 95 S.Ct. at 1292. However, agreements to distribute narcotics obviously involve grave dangers to persons who are not parties to the substantive offense, rendering inapplicable the rationale underlying Wharton's Rule. See *Developments in the Law: Criminal Conspiracy,* 72 Harv.L.Rev. 920, 954–55 (1959).

4. Further evidence of Congressional concern with organized drug distribution can be found

in sections of the Act which make it an offense to engage in a "continuing criminal enterprise" for the sale of controlled substances, and which provide increased sentences for felonious violations of the Act undertaken in furtherance of a conspiracy of three or more persons in which the defendant played a leading role. See 21 U.S.C. §§ 848, 849(e)(3).

5. Since appellant did not exercise his right pursuant to Fed.R.Crim.P. 23(c) to obtain special findings as to whether such other persons were part of the conspiracy, he cannot now complain that there were no findings as to the identity of the other conspirators. See *Lustiger v. United States,* 386 F.2d 132, 135 (9th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142 (1968); *United States v. Devenere,* 332 F.2d 160, 162 (2d Cir. 1964).

lant was convicted of conspiring to commit included *possession* of a controlled substance with intent to sell it, 21 U.S.C. § 841(a)(1), an offense which patently requires only one person for its commission, even a conspiracy consisting solely of appellant and Ciraco would include more people than those required to commit the substantive offense, and Wharton's Rule would not prohibit the conviction. Lastly, as we explain in more detail below, the scope of the conspiracy, which contemplated an ongoing relationship in which there would be additional sales, extended beyond the one pound of methamphetamine which was the subject of the substantive count.

 Appellant next argues that the evidence was insufficient to support a conviction on the conspiracy count. Relying chiefly on *United States v. Peoni,* 100 F.2d 401 (2d Cir. 1938), he argues that the evidence shows only one simple sale from himself to Ciraco, not any agreement between them to further Ciraco's resale of the drugs in New York. However, the record clearly supports the conclusion that, from their first meeting in Miami, appellant and Ciraco had agreed to participate in an ongoing drug distribution venture. Appellant originally offered to sell 10 pounds of methamphetamine to Ciraco, but the latter decided to take it "only a pound at a time." Before Ciraco left Miami with the initial pound, appellant insisted that Ciraco "keep in touch and let me know what is happening." After Ciraco returned to New York, appellant questioned him over the telephone about the progress of the sales, and asked when he would receive the money still due on the pound. In short, unlike the seller of counterfeit bonds in *United States v. Peoni, supra,* who merely knew in a general way that the bonds might pass from his buyer into a third party's hands, appellant remained actively interested in Ciraco's resale of the drugs, received money from those resales, and obviously planned to provide Ciraco with more merchandise for sale in the future. He was thus properly found guilty of conspiring with him to possess

the drugs with intent to distribute and to resell the drugs. See *United States v. Purin,* 486 F.2d 1363, 1369 (2d Cir. 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974); *United States v. Bynum,* 485 F.2d 490, 495–96 (2d Cir. 1973), *vacated and remanded on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 45 L.Ed.2d 463 (1974); *United States v. Campisi,* 306 F.2d 308, 311 (2d Cir.), *cert. denied,* 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962).

This same evidence of appellant's continuing active stake in the outcome of Ciraco's sales in New York adequately supports his conviction as an aider and abettor of Ciraco's possession and distribution, pursuant to 18 U.S.C. § 2. From the evidence, it seems clear that appellant fits within the requirements this court has laid down for conviction for aiding and abetting: "that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Peoni, supra,* 100 F.2d at 402; see *United States v. Campisi, supra.* The absence of a reference in the indictment to 18 U.S.C. § 2 does not bar the conviction on this count. *United States v. Taylor,* 464 F.2d 240, 242 n.1 (2d Cir. 1972); *United States v. Tropiano,* 418 F.2d 1069, 1083 (2d Cir. 1969), *cert. denied,* 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970).

The final contention advanced by appellant is that the Double Jeopardy Clause bars his conviction on the conspiracy count. He rests this argument on the fact that, in October 1974, he pleaded guilty to an indictment charging him with conspiring to violate the controlled substances act in Oklahoma. Appellant argues that the Oklahoma conspiracy and the conspiracy in the present case are in fact but one conspiracy and that he has already been convicted for his participation in it as a result of his Oklahoma plea. The only evidence offered to prove the extent of the Oklahoma conspiracy is the indictment itself; thus we must determine from the face of that

indictment, and the evidence presented in this case, whether his guilty plea in Oklahoma is a bar, under the Double Jeopardy Clause, to conviction on the present conspiracy count.

■ Under the traditional test laid down a century ago by Chief Justice Shaw a claim of double jeopardy will be upheld if "the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other." *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871), *quoted with approval in Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911); *Ex Parte Nielson,* 131 U.S. 176, 187–88, 9 S.Ct. 672, 33 L.Ed. 118 (1889); and *United States v. Kramer,* 289 F.2d 909, 913 (2d Cir. 1961). Since the overt acts alleged in the two conspiracies, the named co-conspirators, and the alleged locations of the two conspiracies are all completely different, appellant has failed to meet the requirements of the "same evidence" test. See *United States v. McCall,* 489 F.2d 359, 362–63 (2d Cir. 1973), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974).

■ The rigidities of the "same evidence" test have, however, often been criticized, see, e. g., *Ashe v. Swenson,* 397 U.S. 436, 448, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, *J.,* concurring), and this court has recognized the dangers involved in "applying a strict same evidence test in the context of criminal conspiracy" because it may allow the government an undue amount of prosecutorial discretion to "carv[e] one larger conspiracy into smaller separate agreements" by naming different overt acts and co-conspirators in different indictments. *United States v. Mallah,* 503 F.2d 971, 985 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), see also *United States v. Cioffi,* 487 F.2d 492, 496–97 (2d Cir. 1973). Thus, in *Mallah,* we found

that the appellant there had set forth sufficient evidence demonstrating that the two conspiracies alleged were in fact one to place upon the government the burden of rebutting the inference, which it failed to do. Appellant here argues that he has made a similar showing that the Oklahoma conspiracy and the present conspiracy are but two faces of the same combination. We disagree. In *Mallah* the two conspiracies were both alleged to have taken place in the same locality, New York City. 503 F.2d at 983. In this case the localities of the conspiracies are as widely removed from one another as the streets of New York are from the plains of Oklahoma. The two indictments in *Mallah* named the identical starting date for the two alleged conspiracies, *id.* at 982, whereas here, different starting dates are alleged, though the periods of operation for the two conspiracies do overlap by three months. Most important, the proof in *Mallah* established that one of the conspiracies involved "a large-scale, far-flung narcotics organization," *id.* at 983, which suggested that the unnamed co-conspirators in that case were the named co-conspirators in the other case, and there was indeed evidence that the personnel involved in the one conspiracy were acquainted with those in the other. *Id.* at 986. In the present case, by contrast, although the evidence supports the existence of a conspiracy, it does not reveal an organization that might have encompassed the operations and personnel alleged in the Oklahoma indictment. Aside from the fact that appellant was named in both indictments, there is no indication of any overlap of personnel between this conspiracy and the Oklahoma conspiracy. In sum, we do not believe appellant has shown that the indictments in fact involve the same conspiracy, in whole or in part, and hold that he has not been placed in double jeopardy by the present prosecution for conspiracy.

The judgment of conviction is affirmed.