**UNITED STATES, Appellee,**

v.

**Danny W. CROCKER, Staff Sergeant U.S. Air Force, Appellant.**

No. 43,157.
ACM 23291.

U.S. Court of Military Appeals.

June 11, 1984.

For Appellant: *Major William H. Lamb* (argued); *Colonel George R. Stevens* (on brief).

For Appellee: *Major Michael J. Hoover* (argued); *Colonel Kenneth R. Rengert* (on brief); *Colonel James P. Porter.*

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial consisting of a military judge alone tried appellant on a charge that he had conspired to wrongfully possess and transfer cocaine, in violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881, and on a charge with nine specifications alleging miscellaneous drug offenses, in violation of Article 134, UCMJ, 10 U.S.C. § 934. Pursuant to his pleas, Crocker was found guilty as charged and sentenced to a bad-conduct discharge, 2 years' confinement, forfeiture of all pay and allowances, and reduction to pay grade E-1. The convening authority approved the findings and sentence except for a reduction of the forfeitures to $200.00 pay per month for 24 months.

After the United States Air Force Court of Military Review affirmed in a *per cu-* *riam* opinion, we granted review of three issues, 13 M.J. 466 (1982). The only one which is still viable is:

> WHETHER WHARTON'S RULE APPLIES TO THE MILITARY IN THAT APPELLANT MAY NOT BE CHARGED AND FOUND GUILTY OF BOTH THE OFFENSE OF TRANSFER OF COCAINE AND THE OFFENSE OF CONSPIRACY TO TRANSFER COCAINE WHERE THERE ARE ONLY THE SAME TWO PARTIES TO BOTH TRANSACTIONS, ONE OF WHOM IS THE APPELLANT.

We affirm.

I

The single specification under the conspiracy charge alleged that appellant

> did, at Mehlbach, Germany, between on or about 1 January 1981 and about 22 January 1981, conspire with Senior Airman David D. Batz to commit offenses under the Uniform Code of Military Justice, to wit: the wrongful possession and transfer of cocaine, and in order to effect the object of the conspiracy the said Senior Airman David D. Batz gave to the said Staff Sergeant Danny W. Crocker the sum of 4,000 Deutsch Marks on or about 16 January 1981 and in order to further effect the object of the conspiracy the said Staff Sergeant Danny W. Crocker traveled to Amsterdam, The Netherlands, on or about 18 January 1981 to arrange for the purchase of cocaine.

Specification 1—the first of three specifications of Charge II which concerned offenses committed on January 23, 1981—alleged wrongful transfer of 3.53 grams of cocaine; specification 2 alleged wrongful possession of 8.43 grams of cocaine; and specification 3 alleged wrongful use of cocaine. The remaining specifications under Charge II concerned Crocker's involvement with marihuana.[1]

---

1. Specification 4—wrongful possession of 497 grams of marihuana on January 23, 1981, with intent to distribute; specification 5—wrongful use of marihuana on January 23, 1981; specifi- cation 6—wrongful use of marihuana on May 25, 1981; specification 7—wrongful possession of 153 grams of marihuana on May 25, 1981; specification 8—wrongful transfer of marihua-

In connection with his pleas of guilty, appellant entered into a stipulation of fact which, among other things, recited:

On 23 January 1981, at his apartment in Mehlbach, Germany, the accused wrongfully transferred 3.53 grams of cocaine in a piece of paper to SrA David D. Batz. The two had previously agreed between them at that same apartment, between about 1 January 1981 and about 22 January 1981, that the accused would purchase cocaine for SrA Batz in Amsterdam. To seal the agreement, SrA Batz gave the accused 4000 DM on about 18 January 1981 to purchase the cocaine. On about 18 January 1981, the accused rented a vehicle for the trip to Amsterdam to purchase the cocaine. The amount of cocaine later given to SrA Batz came from the amount purchased in Amsterdam.

\* \* \* \* \* \*

On 23 January 1981, pursuant to a lawful search of the accused's apartment, the following items, in the wrongful possession of the accused, were seized: 9 paper packets containing a total of 8.43 grams of cocaine; a metal box lid with cocaine residue on it; an X–Acto Knife with cocaine residue on it; and a total of 497 grams, more or less, of marijuana in hashish form.

The circumstances were explained further by this testimony of appellant during the providence inquiry:

MJ: Let me—Let's go back to the period of time between 1 January '81 and 22 January '81. Okay?

ACC: Yes, sir.

MJ: Now, when you told Batz that you would get him drugs—Okay?

ACC: Yes, sir.

MJ: —was your purpose to possess jointly with him, that is, you would both be owners of the drugs you would get?

ACC: No, sir. The only drugs—The cocaine was his drugs, because he gave me the money for it, sir. As far as the

marijuana, it was mine. It wasn't Batz's.

MJ: So that you did not agree to possess cocaine with Senior Airman Batz, did you? What you're telling me is what you did—all you did was tell him that you would buy some for him.

ACC: Yes, sir.

MJ: But once you gave it to him, it was his stuff and not yours.

ACC: Yes, sir. I agreed to buy him, you know, the cocaine, because he fronted me the money, except for the portion that he said he would give to me. I imagined that 3 grams would be mine, because I agreed to buy him the stuff for it.

MJ: Right.

ACC: Okay. But as far as all the excess, it was his, to do with as he wanted, you know; I had no idea what he wanted it for, because he was a user too, like me. And it wasn't a large amount, you know.

MJ: Yeah. What about this transfer then?

ACC: This transfer was transferring what he fronted me.

MJ: Okay. Well, you did not intend to redistribute to other people in the community.

ACC: No, sir.

MJ: The only thing that you intended— The only transfer that you had in your mind was the transfer of giving him the drugs.

ACC: Yes, sir.

In light of this testimony, the judge perceived "a legal problem" which he discussed with counsel as well as with appellant. The judge's concern was that, in light of Wharton's Rule, the conspiracy could not be separately prosecuted and punished. Finally, he decided that the offenses were distinct and accepted Crocker's pleas.

na on May 25, 1981; specification 9—wrongful possession of 23.2 grams of marihuana on May

26, 1981.

Later in the trial, immediately after announcing appellant's sentence, the judge remarked:

> MJ: I wish to state for the record that appellate authorities reviewing this case, in my estimation, would like to know the portion of confinement that was adjudged as a result of the conviction of Charge I and the Specification. While sentences are normally reviewed in the aggregate, I will, for that purpose, state that the discharge and eighteen months confinement, the forfeiture of all pay and allowances and the reduction to the grade of E–1 were imposed as a consequence of conviction of the second Charge; and the additional six months was imposed as a result of conviction on the first Charge.[2]

## II

■ "Under the early common law, a conspiracy—which constituted a misdemeanor—was said to merge with the completed felony which was its object." *Callanan v. United States*, 364 U.S. 587, 589, 81 S.Ct. 321, 323, 5 L.Ed.2d 312, 315 (1961). However, "[a]s ... common-law procedural niceties disappeared, the merger concept lost significance, and today it has been abandoned," *id.* at 589–90, 81 S.Ct., at 323; so today a conspiracy can be separately charged and punished along with any crime which may be the object of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Gaeta*, 14 M.J. 383, 391 (C.M.A.1983); *United States v. Washington*, 1 M.J. 473 (C.M.A.1976).

The rationale for this view is that "[a] conspiracy, [which] is a partnership in crime ... has ingredients, as well as implications, distinct from the completion of the unlawful project." 328 U.S. at 644, 66 S.Ct. at 1182. Justice Douglas then quoted the following statement from *United States v. Rabinowich*, 238 U.S. 78, 88, 35 S.Ct. 682, 685, 59 L.Ed. 1211 (1915):

> "For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy, rendering it difficult of detection, requiring more time for its discovery, and adding to the importance of punishing it when discovered."

328 U.S. at 644, 66 S.Ct. at 1182.

As to the separateness of a substantive offense from the conspiracy to commit it, the Supreme Court has stated:

> This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

---

**2.** The judge is to be commended for providing this clarification for the benefit of those who later would review the record. By his statement for the record, the judge gave a precise measure of the effects of any error that he might have committed in his decision on the applicability of Wharton's rule.

*Callanan v. United States, supra* 364 U.S. at 593–94, 81 S.Ct. at 325 (footnote omitted) (quoted in *Iannelli v. United States,* 420 U.S. 770, 778, 95 S.Ct. 1284, 1290, 43 L.Ed. 2d 616 (1975), and in *Jeffers v. United States,* 432 U.S. 137, 157, 97 S.Ct. 2207, 2219, 53 L.Ed.2d 168 (1977)).

However, there are a few exceptions to this principle of separateness:

One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime.

*Pinkerton v. United States, supra* 328 U.S. at 643, 66 S.Ct. at 1182; *see United States v. Katz,* 271 U.S. 354, 355–56, 46 S.Ct. 513, 513–14, 70 L.Ed. 986 (1926).

Another is where the definition of the substantive offense excludes from punishment for conspiracy one who voluntarily participates in another's crime.

328 U.S. at 643, 66 S.Ct. at 1182; *see Gebardi v. United States,* 287 U.S. 112, 121, 122, 53 S.Ct. 35, 37, 38, 77 L.Ed. 206, 210, 211 (1932).

The former exception is sometimes referred to as

Wharton's Rule [which] owes its name to Francis Wharton, whose treatise on criminal law identified the doctrine and its fundamental rationale:

"When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained. ... In other words, when the law says, 'a combination between two persons to effect a particular end shall be called, if the end be effected, by a certain name,' it is not lawful for the prosecution to call it by some other name; and when the law says, such an offense—e.g., adultery—shall have a certain punishment, it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy."

*Iannelli v. United States, supra* 420 U.S. at 773, 95 S.Ct. at 1288.

Wharton's "Rule traces its origin to ... [a] decision of the Pennsylvania Supreme Court in" 1850, *id.* at 779, 95 S.Ct. at 1291, and it has long been recognized in military law. *See, e.g., United States v. Yarborough,* 1 U.S.C.M.A. 678, 688, 5 C.M.R. 106, 116 (1952). Although at one time the Rule was thought to have a constitutional basis, *see Iannelli v. United States, supra* 420 U.S. at 779–80, 95 S.Ct. at 1290–91, the Supreme Court has made clear "that the broadly formulated Wharton's Rule does not rest on principles of double jeopardy." *Id.* at 782, 95 S.Ct. at 1292. Justice Powell explained:

Instead, it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large. See *United States v. Bobo,* 477 F.2d, at 987. Finally, the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert. It cannot, for example, readily be assumed that an agreement to commit an offense of this nature will produce agreements to engage in a more general pattern of criminal conduct.

420 U.S. at 782–84, 95 S.Ct. at 1292–93 (footnotes omitted).

The holding that Wharton's Rule is based on legislative intent, rather than on double jeopardy, parallels the view of the majority in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), that limitations on multiple punishment for a single transaction are based on legislative intent, rather than on the double-jeopardy prohibition. *Missouri v. Hunter* left unanswered the question whether at some point split-

ting a single transaction into many parts for purposes of findings—and especially of sentence—might pose problems of cruel and unusual punishment under the Eighth Amendment. *Cf.* Art. 55, UCMJ, 10 U.S.C. § 855.

 Appellate government counsel have called our attention to several limitations on the application of Wharton's Rule. For one thing, since the Rule is based on presumed legislative intent, the legislature can displace the Rule if it so chooses. Thus, the history of the statute whereunder a defendant is being prosecuted for the substantive offense may be important in determining whether the Rule applies. *Cf. Iannelli v. United States, supra*; *United States v. Rodriguez*, 612 F.2d 906 (5th Cir. 1980), *aff'd sub nom. Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Bommarito*, 524 F.2d 140 (2d Cir. 1975). Secondly, there is a "recognized 'third-party exception,' which renders Wharton's Rule inapplicable when the conspiracy involves the cooperation of a greater number of persons than is required for commission of the substantive offense." *Iannelli v. United States, supra* 420 U.S. at 775, 95 S.Ct. at 1289; *see Gebardi v. United States, supra* 287 U.S. at 122 n. 6, 53 S.Ct. at 37 n. 6; *United States v. Bommarito, supra.*

 Finally, according to the Supreme Court:

Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents. In such cases, a closer relationship exists between the conspiracy and the substantive offense because *both* require collective criminal activity. The substantive offense therefore presents some of the same threats that the law of conspiracy normally is thought to guard against, and it cannot automatically be assumed that the Legislature intended the conspiracy and the substantive offense to remain as discrete crimes upon consummation of the latter.

*Iannelli v. United States, supra* at 785, 95 S.Ct. at 1293 (footnote omitted); *see also*

*United States v. Earhart*, 14 M.J. 511, 514 (A.F.C.M.R.1982), *pet. granted*, 15 M.J. 62 (1982). Thus, in accord with its own rationale, Wharton's Rule should not apply where the conviction of the substantive offense involved does not demand the *concerted* criminal activity against which the conspiracy prohibition is directed.

## III

In arguing that Wharton's Rule is inapplicable to the case at bar, appellate government counsel rely heavily on the strong congressional policy against drug abuse in the armed services. *Cf. United States v. Trottier*, 9 M.J. 337 (C.M.A.1980). In their view this policy precludes application of Wharton's Rule to any case involving drugs. *Cf. United States v. Osthoff*, 8 M.J. 629 (A.C.M.R.1979).

This argument might have greater weight if Crocker had been prosecuted for violation of a statute specifically prohibiting drug offenses. *Cf. United States v. Bommarito, supra* (prosecution under the Comprehensive Drug Abuse Prevention and Control Act of 1970). However, appellant was prosecuted for conspiring to commit offenses under Article 134, and for present purposes "examination of ... [the] legislative history [of Article 134] is virtually fruitless." *United States v. Earhart, supra* at 515. Therefore, we lack any manifestation of a clear legislative intent that Wharton's Rule should not apply to the kind of offenses prosecuted in this case.

The "third-party exception" appears inapplicable to the present case, because only Crocker and one other person, Batz, participated in the conspiracy. However, the Government has a sound basis for contending that Wharton's Rule should not be invoked here because the substantive offense—transfer of cocaine—does not require *concerted* criminal activity by the transferor and the transferee of the drug. Urging that we should "look to the wording, definitions, and elements of the substantive law violated," *see United States v. Earhart, supra* at 514, the Government

points out that one may be convicted of wrongfully transferring a drug to another person, even if the transferee is unaware of the nature of the substance delivered to him and lacks any criminal intent. Thus, because a conviction for transfer only requires criminal activity by one person, Wharton's Rule should not apply where, as here, an accused is charged with transfer of contraband and conspiracy to transfer that same contraband.

One difficulty we have with this argument is that some of "[t]he classic Wharton's Rule offenses" mentioned by the Supreme Court in *Iannelli v. United States* [3] would also seem to be unsuitable for application of the Rule. For example, bigamy does not require that both parties have a criminal intent, *cf.* App. 6, form specification 130, Manual for Courts-Martial, United States, 1969 (Revised edition), and often it is committed when only one of the parties to the bigamous marriage is aware of the facts. Likewise, although adultery requires the cooperation of two persons, under some definitions of the offense [4] it is possible for only one to be guilty of the substantive offense, and yet the two parties cannot be prosecuted for conspiracy to commit adultery.[5]

On the other hand, the concerted activity of appellant and Batz extended over a period of several days; and by acting in unison, the two men were able to achieve results which they could not have achieved separately. Thus, to whatever extent Wharton's Rule is concerned with the presence of an added potential for evil resulting from concerted criminal action, appellant's partnership with Batz should be treated as separate for purposes of findings and sentence.

■ However, even if appellant's conspiracy to transfer cocaine should not be viewed as separate from his transfer of the same drugs, Wharton's Rule would not apply to the case at bar. The conspiracy alleged in Charge I was a conspiracy both to *possess* and transfer cocaine. As possession is "an offense which patently requires only one person for its commission," a conspiracy to possess consisting solely of two persons "would include more people than those required to commit the substantive offense, and Wharton's Rule would not prohibit the conviction." *United States v. Bommarito, supra* at 145.

■ When two persons agree to accomplish several criminal objectives, the plurality of objectives does not result in there being more than one conspiracy.[6] Indeed, it would be improper to charge several conspiracies where there was only a single agreement. *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). Since appellant and Batz had a single agreement—which contemplated both possession and transfer of the cocaine—the draftsmen of the charges properly alleged conspiracy in a single specification. If no reference to transfer had been contained in that specification and only a conspiracy to possess had been alleged, Wharton's Rule clearly would not apply because possession does not require concerted criminal action. We do not see how the reference in this specification to another purpose of the conspiracy—namely, transfer of the cocaine—could change this

---

**3.** 420 U.S. 770, 782, 95 S.Ct. 1284, 1292, 43 L.Ed.2d 616 (1975).

**4.** *Cf.* App. 6, form specification 127, Manual for Courts-Martial, United States, 1969 (Revised edition).

**5.** "It is not to be supposed that the consent of an unmarried person to adultery with a married person, where the latter alone is guilty of the substantive offense, would render the former an abettor or a conspirator." *Gebardi v. United States*, 287 U.S. 112, 123, 53 S.Ct. 35, 38, 77 L.Ed. 206, 212 (1932).

**6.** However, if a single conspiracy violates different statutes, the defendant may be charged in separate counts and consecutive sentences imposed. *See Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (conspiracy to import marihuana under 21 U.S.C. § 963 and conspiracy to distribute marihuana under 21 U.S.C. § 846); *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946) (conspiracy in restraint of trade under 15 U.S.C. § 1 and conspiracy to monopolize under 15 U.S.C. § 2).

result. Instead, for purposes of Wharton's Rule, the allegation that a second purpose of the conspiracy was to transfer cocaine should be treated as redundant.

## IV

More than three decades ago, Justice Jackson criticized the abuse and misuse of conspiracy charges. *See Krulewitch v. United States,* 336 U.S. 440, 445, 69 S.Ct. 716, 719, 93 L.Ed. 790 (1949). He referred to "[t]he unavailing protest of courts against the growing habit to indict for conspiracy in lieu of prosecuting for the substantive offense itself, or in addition thereto." *Id.* at 445–46, 69 S.Ct. at 719 (footnote omitted). His criticism still rings true. Because Wharton's Rule helps prevent the misuse of conspiracy charges, it should not be applied grudgingly when only the same two parties are involved.

■ Paragraph 26*b* of the Manual for Courts-Martial states that "[o]ne transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person," and excessive use of conspiracy charges contravenes this direction. *Cf. United States v. Sturdivant,* 13 M.J. 323 (C.M.A.1982). Therefore, even though transfers of contraband may fall outside the scope of Wharton's Rule because concerted criminal action is not required, *see Iannelli v. United States, supra* 420 U.S. at 785, 95 S.Ct. at 1293, and *United States v. Earhart, supra,* we do not believe that every routine transfer of a drug should lead to preferring a charge of conspiracy to transfer that drug. Otherwise, the maximum punishment for a transfer will be elevated above that which normally would be allowed for such a transaction under the Table of Maximum Punishments. *See* para. 127*c*, Manual, *supra.* Moreover, such a practice in charging also tends to promote discrimination between those accused who have been doubly prosecuted in this manner and those who have been charged only with the substantive offense.

■ Although a prosecutor has great discretion in his choice of charges, *cf. United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), trial and appellate judges should be alert to prevent the misuse of conspiracy charges to escalate maximum punishments imposable beyond those which the President had in mind. Otherwise, prosecutors will have a virtual invitation to be vindictive as to some accused by adding conspiracy charges to the substantive offenses against them. *Cf. Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

## V

We hold that Wharton's Rule did not apply in the present case. Furthermore, the multiplication of charges was not unreasonable, and the conspiracy charge was properly used to prosecute concerted criminal activity. Accordingly, the decision of the United States Air Force Court of Military Review is affirmed.

Senior Judge COOK concurs.

FLETCHER, Judge (concurring in the result):

I concur with the conclusion reached by the majority. A simple restatement of the rule is found in *Wharton's Criminal Law,* § 731 (C. Torcia 14th ed. 1981) (footnote omitted), as follows:

> An agreement between two persons to commit an offense does not constitute conspiracy when the target offense is so defined that it can be committed only by the participation of two persons.

Where there is a third party to the crime, the rule has never applied. *See Iannelli v. United States,* 420 U.S. 770, 782 n. 15, 95 S.Ct. 1284, 1292 n. 15, 43 L.Ed.2d 616 (1975); *Gebardi v. United States,* 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932); *Wharton's, supra,* p. 547. In this matter there could have been no possession by or transfer between the parties to the conspiracy without the intervention of a third party—the person who sold the drugs to appellant in Amsterdam.