UNITED STATES, Appellee,

v.

**Specialist Four James R. MATIAS, 101–54–5110, United States Army, Appellant.**

**CM 446048.**

U.S. Army Court of Military Review.

25 March 1986.

---

For Appellant: Thomas R. Matias, Esquire (argued); Lieutenant Colonel Arthur L. Hunt, JAGC, Major Stephen R. Dooley, JAGC, Captain David L. Carrier, JAGC (on brief).

For Appellee: Captain Erik M. Stumpfel, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Samuel J. Rob, JAGC (on brief).

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

FELDER, Judge:

At a general court-martial appellant was convicted of conspiracy to distribute marijuana, conspiracy to possess and distribute cocaine, distribution of marijuana, and possession of cocaine with intent to distribute, in violation of Articles 81 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 934 (1982) respectively. The sentence adjudged by the court members and approved by the convening authority included a bad-conduct discharge, confinement at hard labor for two years, total forfeitures and complete reduction.

The convictions resulted from two covert drug operations orchestrated by undercover agents. Among appellant's numerous complaints, he challenges the sufficiency of the evidence to sustain the conspiracy convictions. These convictions depend in part upon the testimony of Private First Class James M. Eaves, a confidential informant and a chronic liar. But even the testimony of a liar may be believed when it is corroborated by credible witnesses and not controverted by other evidence. *See United States v. Morrissey,* 14 M.J. 746 (A.C.M.R.1982), *pet. denied,* 15 M.J. 323 (C.M.A.1983).

On 18 October 1983 Military Police Investigator George P. Case and Eaves went to purchase marijuana at an off-post residence located near Fort Lewis, Washington. The residence was shared by Specialist Four Steven R. Todhunter, Specialist Four Charles W. Geisel and appellant. When they arrived, Geisel allowed them to enter. Appellant was in bed at the time. Eaves went to appellant's bedroom to get him to sell the marijuana. Appellant refused to get out of bed, saying he was too tired and that Geisel could "take care of it." Geisel initially did not want to participate in the transaction and he and appellant had a brief argument over the matter. Geisel eventually relented and, upon learning from appellant that the marijuana was under a desk in Todhunter's bedroom, obtained the marijuana and offered to sell it for $250.00. Appellant, still in his bedroom while the other parties were in the living room, told Geisel it was not worth his time to sell the marijuana for $250.00 and that he wanted $280.00 and no less because he needed the money to repair his car. The transaction was completed and the purchasers departed.

On 15 November 1983, pursuant to a prearranged plan to purchase a half pound of marijuana from Todhunter, Investigator Case and Deputy Sheriff Debra Simcoe, a civilian undercover agent, went to the same residence. Present were Todhunter, Eaves, Curtis A. Kinlock (a civilian drug dealer), and appellant. Todhunter stated that he did not have the marijuana but Kinlock offered to obtain a half ounce of cocaine for the agents. Everyone then left the house except appellant, the undercover agents ostensibly to obtain additional funds and the dealers to secure the cocaine. The agents returned before the dealers. Case asked appellant what were his chances of getting the cocaine. Appellant said, "a hundred percent" and that he had called and had it all arranged. (The statement seems to be boastful talk by appellant. Todhunter and Kinlock appeared to have made the arrangements for the cocaine.) Then the telephone rang, appellant answered, and told the agents that Kinlock did not want to come in because he had seen police cars in the neighborhood. Appellant and Eaves went outside to determine whether the house was under surveillance. After deciding that it was, appellant tried to discourage Kinlock and Theodore F. Suepke (another civilian drug supplier) from completing the transaction, but Eaves urged them to continue. Eventually, everyone returned to the house, where Suepke produced the cocaine. Appellant weighed it and made several remarks about its amount, quality and appearance. Simcoe activated a concealed beeper that signaled the civilian police outside. Simcoe and Case then drew their weapons and apprehended everyone while the police broke through the front door.

■ The essence of the crime of conspiracy is an agreement and action to violate the law. The agreement and the act must occur independently. *United States v. Pretlow*, 13 M.J. 85 (C.M.A.1982); Manual for Courts-Martial, United States, 1969 (Rev.ed.), paragraph 160 [hereinafter cited as MCM, 1969]. However, there is no requirement that the act taken in furtherance of the conspiracy be independent from the act which violates the law. In other words, the overt act may also constitute the substantive offense. Paragraph 160, MCM, 1969.

■ Applying the law to the facts of this case, we find that the conspiracy to distribute marijuana and the distribution of marijuana on 18 October 1983 have been proven beyond any reasonable doubt. Initially, neither appellant nor Geisel personally wanted to sell marijuana to the undercover agents. According to one witness, "they weren't really working together. There was just a big argument as to who was going to do it when we got into the house." Eventually, appellant persuaded Geisel to conduct the sale. The conspiratorial agreement was formulated when Geisel acquiesced in appellant's request for him to do so. The overt acts to effect the object of the conspiracy (and the substantive crime itself) consisted of Geisel obtaining

the drug from the place where appellant said it was located and distributing it to the agents for the purchase price mandated by appellant. Appellant's role in the transaction made him a co-conspirator and an aider and abettor to the substantive crime of distributing marijuana.

With regard to the drug transaction on 15 November 1983, the evidence of appellant's complicity as a co-conspirator began to emerge when he informed the undercover agent that the agent had a "hundred percent" chance of purchasing a quantity of cocaine because he (appellant) had made some sort of arrangement to obtain the substance. This statement might not have been factual but it does establish appellant's inclination to engage in drug activities. His complicity developed further when he surveyed the neighborhood to ascertain for the other dealers whether there were police officers in the area. True, appellant might have abandoned the conspiracy when he discovered the police surveillance, and we shall give him the benefit of the doubt, but he rejoined the conspiracy at the urging of the confidential informant. Appellant's acts of weighing the cocaine and promoting its sale amply proved his participation in a criminal conspiracy to distribute cocaine and the substantive offense of possession of cocaine with intent to distribute.[1]

█ It is obvious that appellant was not entrapped by the confidential informant as he contends. His predisposition to sell cocaine was manifested repeatedly and survived despite his fear of apprehension. The evidence excludes any possibility of entrapment. *See United States v. Sermons,* 14 M.J. 350 (C.M.A.1982); *United States v. Vanzandt,* 14 M.J. 332 (C.M.A. 1982).

█ The crime of conspiracy and the substantive offense are separately punishable, *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Crocker,* 18 M.J. 33 (CMA 1984); *United States v. McAnaugh,* 13 M.J. 295 (CMA 1982); *United States v. Washington,* 1 M.J. 473 (C.M.A.1976), even though the policy of charging both crimes has generated criticism, *United States v. Gates,* 8 M.J. 631, 632 n. 3 (A.C.M.R.1979), especially in cases where only two persons are involved in the routine transfer of drugs, *United States v. Crocker,* 18 M.J. at 40; *United States v. Earhart,* 14 M.J. 511, 516 n. 3 (A.F.C.M.R.1982), *aff'd,* 18 M.J. 421 (C.M.A.1984).

The remaining errors assigned by appellant and his counsel have been considered and determined to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge WOLD and Judge NAUGHTON concur.

---

**1.** Civilian counsel for appellant, in a lengthy brief and during oral argument before this court, referred to inconsistencies in the testimony of government witnesses by comparing their trial testimony with statements made at the Article 32, UCMJ, 10 U.S.C. § 832, investigation, testimony at the court-martial of a Private Geisel, and comments in the investigating agent's reports. That material, which was not admitted at trial, has not been considered by this court in determining the guilt or innocence of appellant. *United States v. Bethea,* 46 C.M.R. 223 (C.M.A. 1973); *United States v. Lanford,* 20 C.M.R. 87 (C.M.A.1955); *United States v. Brundidge,* 20 M.J. 1028 (A.C.M.R.1985).