**UNITED STATES**

v.

**Wade M. JOHNSON, Airman (E–3), U.S. Navy.**

**NMCM 200001792.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 28 April 2000.

Decided 30 Jan. 2003.

---

LCDR Mary Grace McAlevy, JAGC, USNR, Appellate Defense Counsel.

CDR George F. Reilly, JAGC, USN, Appellate Defense Counsel.

LT Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

Before OLIVER, Senior Judge, VILLEMEZ, and HARRIS, Appellate Military Judges.

HARRIS, Judge:

In accordance with his pleas, Appellant was convicted by a military judge sitting as a general court-martial of four specifications of conspiracy to wrongfully use a controlled substance (morphine), violation of a lawful general regulation by wrongfully possessing alcohol on board ship, wrongfully making a false official statement, wrongfully disposing of military property, two specifications of wrongful use of a controlled substance (morphine and marijuana), wrongful possession of a controlled substance with intent to distribute (morphine), wrongful introduction of a controlled substance onto a vessel with intent to distribute (Diazepam), seven specifications of wrongful distribution of a controlled substance (morphine and Diazepam), and two specifications of larceny of military property, in violation of Articles 81, 92, 107, 108, 112a, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 907, 908, 912a, and 921.

On 28 April 2000, Appellant was sentenced to a dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. On 25 October 2000, the convening authority (CA) approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed. However, pursuant to a pretrial agreement, the CA suspended all confinement in excess of 4 years for a period of 4 years from the date of trial.

We have carefully reviewed the record of trial, Appellant's two assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Statement of Facts

Appellant enlisted in the U.S. Navy on 3 July 1997 and reported to the USS JOHN F. KENNEDY (CV 67) for duty on 9 June 1998. While the ship was deployed from September of 1999 until March of 2000, Appellant engaged in significant criminal misconduct including, *inter alia,* the use and distribution of morphine and Diazepam ("valium") involving several of his fellow shipmates. Prosecution Exhibit 1 at 4–5.

In December of 1999, Appellant stole two boxes of morphine from the main medical storeroom of S–8 division on board the USS KENNEDY. *Id.* at 5. On 4 December 1999, Appellant encountered Fireman Recruit (FR) Jeffrey B. Crowder, U.S. Navy, who was celebrating his birthday. Appellant offered FR Crowder a shot of morphine and FR Crowder agreed. Appellant then injected FR Crowder with one syringe of morphine and injected himself as well. *Id.* at 2.

On 6 December 1999, Appellant approached FR Crowder again after a restriction muster. The two agreed to use the morphine again. Appellant met Airman Recruit (AR) Shawn M. Parkman, U.S. Navy, at that time, and AR Parkman agreed to join them in using the morphine. FR Crowder, AR Parkman, and Appellant went to a storeroom on the fourth deck where Appellant injected himself and the others with the morphine. *Id.* In mid-December, Appellant was in Shop 23 when he asked AR Parkman if he wanted to try the morphine again. Appellant also asked Fire Control Technician Third Class (FT3) James Roberts, U.S. Navy, to join them. All three agreed and Appellant injected himself and the others with one syringe of morphine each. *Id.*

AR Parkman purchased morphine from Appellant on several subsequent occasions. Appellant provided FT3 Roberts with morphine on several additional occasions as well. In addition, Appellant distributed morphine to Machinist Mate Fireman (MMFN) James C. Chewning, U.S. Navy, and Aviation Support Equipment Technician Airman (ASAN) Henry D. Seaton, U.S. Navy, during the month of December. *Id.* at 2, 3, 5.

Also in December of 1999, Appellant agreed to provide MMFN Joseph D. McNight, U.S. Navy, with morphine. On one occasion, Appellant gave MMFN McNight eight syringes of morphine. Appellant injected two of those syringes into MMFN McNight. Appellant provided MMFN McNight morphine on several subsequent occasions. *Id.* at 3.

## "Wharton's Rule" Violation

In his first assignment of error, Appellant asserts that he was improperly convicted of Charge I (four specifications of conspiracy) because the charge was a misuse of Article 81, UCMJ, 10 U.S.C. § 881, as contemplated by *United States v. Crocker,* 18 M.J. 33, 40 (C.M.A.1984), and MANUAL FOR COURTS-MARTIAL, UNITED STATES, (2000 ed.), Part IV, ¶ 5c(3). In the alternative, Appellant asserts that Charge I is an unreasonable multiplication of Charge V, Specifications 5, 7, 8, and 11 (wrongful distributions of morphine). Wherefore, Appellant requests that this Court set aside the findings of guilty to Charge I, and reassess the sentence.

It is well-settled that conspiracy can be separately charged and punished along with any crime which may be the object of that conspiracy. *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Crocker,* 18 M.J. at 36. The rationale for this principle is that "[a] conspiracy, [which] is a partnership in crime ... has ingredients, as well as implications, distinct from the completion of the unlawful project." *Pinkerton v. United States,* 328 U.S. 640, 644, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). However, courts have carved out a limited exception to this practice under the doctrine known as "Wharton's Rule." [1] In its

1. The rule owes its name to Francis Wharton, whose treatise on criminal law identified the

doctrine and its fundamental rationale. *See Iannelli,* 420 U.S. at 773, 95 S.Ct. 1284 (citing 2 F.

most basic form, this doctrine provides that where two parties agree to commit an offense requiring concerted criminal activity and those two parties are the only parties who commit the ultimate offense, conspiracy should not be separately charged.[2] For example: adultery, dueling, bribery, etc.

Appellant contends that he was improperly convicted of conspiracy, because that charge violated Wharton's Rule as articulated in *Crocker*, or alternatively, that the conspiracy specifications constituted an unreasonable multiplication of charges. Appellant's Brief of 31 May 2002 at 5. After having closely examined the record and pertinent case law, we deny Appellant's claim.

■ First, Appellant readily concedes that Wharton's Rule does not apply where the offense underlying the conspiracy charge does not require concerted criminal activity. *Id.* at 6.[3] Appellant nevertheless asserts that "the agreement existed only between Appellant and his co-conspirators, who were necessary to commit the offense of distribution of the morphine." *Id.* However, Appellant's reading of the pleadings is misguided. Specifically, the challenged specifications all allege a plan to commit the offense of "use" of a controlled substance, not distribution. *See* Charge Sheet. Appellant fails to make this fundamental distinction in his analysis. Since the use of an illegal substance does not require concerted criminal activity, Wharton's Rule does not apply.

In addition, Specifications 1 through 3 of Charge I relate to conspiracies that resulted in criminal conduct involving more individuals than the two conspirators identified in the subject specifications. For example, Specification 1 alleges a conspiracy between FT3 Roberts and Appellant to use morphine. Charge Sheet. However, when the two conspirators ultimately used the morphine, another shipmate, AR Parkman, was present

and participated in that criminal conduct. Prosecution Exhibit 1 at ¶ 10. Likewise, Specification 2 alleges a conspiracy between FR Crowder and Appellant to use morphine. Charge Sheet. Again, when Appellant and FR Crowder used the morphine, AR Parkman was present and used the same illegal substance. Prosecution Exhibit 1 at ¶ 9. Finally, Specification 3 alleges a conspiracy between AR Parkman and Appellant to use morphine. Charge Sheet. Appellant used morphine with both AR Parkman and FR Crowder on one occasion and AR Parkman and FT3 Roberts on another. Prosecution Exhibit 1 at ¶¶ 9 and 10. Thus, the offenses underlying these conspiracies were committed by individuals other than (and in addition to) those individuals identified in the respective conspiracy specifications. As such, the circumstances of this case reflect an additional reason why Wharton's Rule does not apply. *See Jiles*, 51 M.J. at 589 (noting that Wharton's Rule only applies where " '[t]he parties to the agreement are the only persons who participate in commission of the substantive offense.' " (quoting *Iannelli*, 420 U.S. at 782, 95 S.Ct. 1284)).

Neither this Court nor our superior Court has ever set aside a conviction for conspiracy to use an illegal substance when that conviction was entered in a case involving a contemporaneous distribution charge. In fact, military courts have repeatedly affirmed the separate charging of conspiracy with other drug offenses. *See Crocker*, 18 M.J. at 40; *Jiles*, 51 M.J. at 589 (upholding a conspiracy to distribute charge despite an acquittal on the underlying distribution charge); *United States v. Earhart*, 14 M.J. 511, 516 (A.F.C.M.R.1982)(finding Wharton's Rule inapplicable because the underlying offense, illegal transfer of drugs, does not require concerted criminal activity), *aff'd*, 18 M.J. 421 (C.M.A.1984); *United States v. Osthoff*, 8 M.J. 629, 631 (A.C.M.R.1979)(affirming con-

---

Wharton, Criminal Law § 1604, p. 1862 (12th ed.1932)).

**2.** Wharton's Rule is a judicial presumption that Congress did not intend certain criminal conduct to be separately charged as a conspiracy. *See Iannelli*, 420 U.S. at 782, 95 S.Ct. 1284; *United States v. Jiles*, 51 M.J. 583, 589 (N.M.Ct.Crim. App.1999).

**3.** Specifically, the *Crocker* court held that Wharton's Rule does not apply where an alleged conspiracy involves an agreement to possess since possession "patently requires only one person for its commission." *See Crocker*, 18 M.J. at 39 (citing *United States v. Bommarito*, 524 F.2d 140, 145 (2d Cir.1975)).

viction on conspiracy to transfer marijuana and the substantive offense of transferring the marijuana). *But see United States v. Parada,* 54 M.J. 730, 733 (C.G.Ct.Crim.App.2001)(dismissing a conspiracy to distribute charge under the rationale of Wharton's Rule).[4]

Appellant further claims there was a "congruence of the agreement and the completed substantive offense." Appellant's Brief of 31 May 2002 at 7. Appellant seems to argue that because he distributed morphine to the same individuals with whom he conspired to use morphine, the agreement to use was indistinguishable from the agreement inherent in the ultimate distribution offenses. However, one can conspire to use an illegal substance with another without distributing the substance to that individual, and likewise, one can distribute an illegal substance without contemplating the mutual use of that substance. Here, Appellant's agreement to distribute was distinct from his agreement to use, because one agreement did not necessarily include the other. The fact that Appellant ultimately used the morphine with his co-conspirators demonstrates the existence of an additional, distinct agreement that was correctly charged as such by the Government.

We have considered Appellant's unreasonable multiplication of charges (UMC) claim and do not find UMC. We note that Appellant did not raise the issue at trial. That decision, standing alone, significantly weakened Appellant's present claim. *See United States v. Quiroz,* 53 M.J. 600, 607 (N.M.Ct. Crim.App.2000)(*en banc*), *rev'd on other grounds,* 55 M.J. 334 (2001)(noting that while not applying a blanket forfeiture rule, the failure to raise the issue at trial suggests that the appellant did not view the multiplication of charges as unreasonable).[5]

In reality, Appellant is seeking clemency from this Court. Appellant's last best chance for such relief was with the CA. *See*

RULE FOR COURTS-MARTIAL 1105, MANUAL FOR COURTS-MARTIAL, UNITED STATES, (2000 ed.). Accordingly, we deny Appellant's request for relief.

### Sentence Appropriateness

In a summary assignment of error, Appellant asserts that a sentence that includes a dishonorable discharge is inappropriately severe. Wherefore, Appellant asks this Court to set aside the dishonorable discharge.

■ A court-martial is free to impose any legal sentence that it determines appropriate. *United States v. Turner,* 14 C.M.A. 435, 437, 34 C.M.R. 215, 217, 1964 WL 4998 (1964); R.C.M. 1002. On review, a court of criminal appeals may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. *See* Art. 66(c), UCMJ. Courts of criminal appeals are tasked with determining sentence appropriateness vice clemency. *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A.1988); R.C.M. 1107(b). Clemency, which involves bestowing mercy, is the prerogative of the CA. *Healy,* 26 M.J. at 395–96. An appropriate sentence results from an "individualized consideration" based upon "the nature and seriousness of the offense and the character of the offender." *United States v. Rojas,* 15 M.J. 902, 919 (N.M.C.M.R.1983)(citing *Snelling,* 14 M.J. at 267), *aff'd,* 20 M.J. 330 (C.M.A.1985).

■ Appellant's sentence was appropriate given the extent and severity of his criminal conduct, including no less than 21 specifications ranging from the distribution of a controlled substance to larceny of military property. Courts have long recognized the seriousness of drug offenses. *See United States v. Beeker,* 18 C.M.A. 563, 565, 40 C.M.R. 275, 277, 1969 WL 6064 (1969) (noting that drug use by military personnel has

---

4. *Parada* appears to be the only case arising under the UCMJ where a conspiracy to distribute charge was dismissed in light of the charging of the underlying distribution offense.

5. The unreasonable multiplication of charges concept was analyzed in detail by this Court and our superior Court in *United States v. Quiroz,* 52

M.J. 510 (N.M.Ct.Crim.App.1999)(*Quiroz I*); affirmed on reconsideration by *United States v. Quiroz,* 53 M.J. 600 (N.M.Ct.Crim.App.2000)(*en banc*)(*Quiroz II*); reversed by *United States v. Quiroz,* 55 M.J. 334 (2001)(*Quiroz III*); and modified on remand in *United States v. Quiroz,* 57 M.J. 583 (N.M.Ct.Crim.App.2002)(*en banc*)(*Quiroz IV*).

a disastrous effect on the health, morale, and fitness for duty of persons in the armed forces). Here, Appellant provided controlled substances to several shipmates and repeatedly used the same while on board a naval vessel in mid-deployment. *See* Prosecution Exhibit 1 at ¶¶ 8–13, 18–23.

Courts have also recognized the seriousness of larceny offenses. *See United States v. Usry,* 9 M.J. 701, 703 (N.C.M.R.1980)(stating that "[l]arceny crimes strike at the very heart of society's ability to exist. . . ."). Furthermore, Appellant offered limited mitigation to deflect his serious criminal conduct, including a brief unsworn statement in which he admitted to uncharged misconduct and attempted to shift blame for his offenses to his parents. *See* Defense Exhibits A–E; Record at 171–73. Also, this was not Appellant's first UCMJ violation as reflected by his nonjudicial punishment of 19 November 1999, and Appellant had only been on active duty just over 2 years at the time he commenced his crime spree. *See* Prosecution Exhibit 1, ¶ 2, Prosecution Exhibit 2. Appellant did, however, offer material and testimony in his favor during presentencing. There can be no doubt he received an individual consideration based on the seriousness of his offenses and his character as reflected in the record. *See United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982). Thus, we find that Appellant is not entitled to relief.

Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *Healy,* 26 M.J. at 395. Appellant's argument on appeal is simply a plea for clemency, which is the prerogative of the CA and not the appellate courts. *Id.* As such, we decline to grant relief.

### Conclusion

Accordingly, we affirm the findings of guilty and the sentence, as approved on review below.

Senior Judge OLIVER and Judge VILLEMEZ concur.