**UNITED STATES**

v.

**Sergeant David L. EARHART, FR 293–52–2959 United States Air Force.**

**ACM 23333.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 24 Sept. 1981.

Decided 27 July 1982.

512

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Alfred E. T. Rusch.

Appellate Counsel for the United States: Colonel James P. Porter, Lieutenant Colonel Bruce R. Houston, Lieutenant Colonel Andrew J. Adams, Captain George D. Cato and Captain Kathleen A. McGah, USAFR.

## DECISION EN BANC

MILLER, Judge:

The accused was convicted, pursuant to his pleas, of transferring cocaine and twice conspiring to transfer cocaine, in violation of Articles 134 and 81, Uniform Code of Military Justice 10 U.S.C. §§ 934, 881. His approved sentence consisted of a bad conduct discharge, confinement at hard labor for 12 months, forfeiture of $330.00 per month for 12 months, and reduction to the grade of airman basic.

In a single assignment of error, the accused alleges that the two conspiracy offenses were multiplicious because, together, they constituted but a single continuing offense. Responding to an issue specified by the Court, defense also contends that because the Care inquiry established, with respect to one of the conspiracy offenses, that the accused's plea extended only to conspiring with a single transferee to transfer cocaine to that transferee, and because the accused's plea to that same substantive transfer was also accepted, the conspiracy plea was improvident by operation of the Wharton Rule.

The two conspiracy charges against the accused were drawn in strict conformity with forms number 3 and 145 provided by Appendix 6 of the Manual for Courts-Martial, 1969 (Rev.). Consequently, despite indications at an Article 32 investigation, 10 U.S.C. § 832 that it was the Government's intent to allege that the accused had conspired with his sole co-conspirator to effectuate transfers of cocaine to third persons, the charges, themselves, simply reflected the object of the conspiracies to be wrongful transfers of cocaine. No additional information about the objects of the conspiracies charged was provided. The transfer charge was similarly drawn. Again, no indication of the identity of the transferee was stated.

Following the accused's in-trial announcement that he intended to plead guilty as charged, the military judge embarked upon his obligatory *Care* inquiry. The accused was asked, during the course of this inquiry, to relate in his own words what happened and how these offenses occurred. He explained that on 28 May his co-conspirator, a close personal friend, had told him he would like to purchase some cocaine. After the accused indicated he would get it for him, this co-conspirator provided him with $200.00 and drove him to Albrook Air Force Station where the accused obtained a large quantity of cocaine from a third party. The accused then gave the just purchased cocaine to his co-conspirator. The accused specifically acknowledged that he knew his co-conspirator did not want the cocaine for himself because of the large amount he had requested. He also acknowledged that, on this occasion, he told his co-conspirator that if he wanted any more cocaine, to come back to him.

After the accused related this information concerning the 28 May conspiracy

charge to the military judge, the judge asked the accused, "Why did Burkett [the co-conspirator] have to come to you?" The following colloquy resulted:

ACC: Well, sir, he came to me because he knew that I could get the drugs from other people and I told him earlier, you know, if he ever needed it, you know, cocaine, to come to me and ask me. And I then, in turn, went to my supplier.

MJ: Oh, I see. I just inferred things differently from the specification. I thought the two of you, Burkett and Earhart, were in agreement to transfer cocaine to other people. That was not what it was at all?

ACC: No sir.

MJ: But the agreement was that, in effect, you'd be acting as a procuring agent for Burkett?

ACC: Yes sir.

MJ: And that you and he agreed that you and he would—Uniform Code of Military Justice provision against the transferring would be violated by your going to get the cocaine for him and transferring it to him; is that correct?

ACC: Yes sir.

When, immediately following this colloquy, the accused was asked by the military judge if the other conspiracy charge, alleged to have occurred on 1 June, was "the same deal," he responded, "Yes sir." The accused then went on to explain that on 1 June his co-conspirator again visited him, this time with $300.00. Again, the co-conspirator asked the accused to obtain cocaine for him. Again, the accused acknowledged to the judge that he was aware the cocaine requested was not for his co-conspirator. This time the accused went to obtain the requested cocaine by himself. Although on this occasion he, again, successfully obtained it, he was unable to actually effectuate its transfer to the co-conspirator because he lost it during his return trip.

Based upon our examination of this *Care* inquiry, we conclude that the military judge established only that the accused intended to plead guilty to conspiring with a single co-conspirator to personally transfer cocaine to that co-conspirator. Not only was any intent of conspiring to transfer cocaine to third parties not established, but the military judge, wittingly or unwittingly, affirmatively discouraged its establishment. Additionally, it appears the judge established that both of the separately charged conspiracy offenses sprung from a single conspiracy agreement, to wit: "acting as a procuring agent for Burkette." Consequently, we are confronted squarely with the issues raised.

I

Dealing first with the specified issue of whether, in view of Wharton's Rule, the accused's pleas to both the 28 May conspiracy and transfer specifications could have been provident, we turn first to an examination of the Wharton Rule itself.

An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.

Wharton's Criminal Law and Procedure, Anderson, Volume 1, Section 89 (1957).

According to the United States Supreme Court:

[1] ... the Rule currently stands as an exception to the general principle that a conspiracy and the substantive offense that is its immediate end do not merge upon proof of the latter. [Citation omitted.]

*Iannelli v. United States,* 420 U.S. 770, 781–782, 95 S.Ct. 1284, 1292, 43 L.Ed.2d 616, 625 (1975).

[2] [The Rule has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary.

*Id.* at 782, 95 S.Ct. at 1292, 43 L.Ed.2d at 625.

[3] [In Wharton Rule offenses] the parties to the agreement are the only persons who participate in commission of the substantive offense. [Footnote omitted.]

*Id.* at 782, 95 S.Ct. at 1292, 43 L.Ed.2d at 626.

[4] [In Wharton Rule offenses] . . . the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert. [Footnote omitted.]

*Id.* at 783, 95 S.Ct. at 1293, 43 L.Ed.2d 626.

[5] Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents. [Emphasis in original.]

*Id.* at 785, 95 S.Ct. at 1293, 43 L.Ed.2d at 627.

The Wharton Rule has traditionally been applied to dueling, bigamy, adultery, incest, gambling, giving and receiving bribes, and buying and selling contraband. *People v. Bloom*, 577 P.2d 288, 290 (Colo.1978).

Applying these statements of existing law, sequentially, to the facts underlying the accused's guilty pleas, we discern no error.

First, unless the Wharton Rule, as interpreted by the Supreme Court, applies, the conspiracy to transfer and the transfer itself are separately punishable offenses.

Second, because the transfer was charged under Article 134, as opposed to a specific punitive Article, and, consequently, no.legislative intent exists,[1] the Rule, if otherwise applicable, has current vitality to these offenses.

Third, since the accused and his co-conspirator/transferee were the only parties to the agreement and they alone participated in the commission of the substantive offense, the third criteria for applicability of the Rule under *Iannelli, supra*, is satisfied.

Fourth, while a simple transfer of cocaine from one individual to another may not be likely to pose the distinct kind of societal threat that the law of conspiracy seeks to avert if committed in the civilian community, *Curtis v. United States*, 546 F.2d 1188, (5th Cir. 1977), almost every involvement of service personnel in drug abuse has a major and direct untoward impact upon the mili-

tary community as a whole. *United States v. Trottier*, 9 M.J. 337, 350 n. 28 (1980). We need not, however, determine whether this distinctive impact upon military society poses the kind of threat the law of conspiracy seeks to avert (*see, United States v. Osthoff*, 8 M.J. 629 (A.C.M.R.1979)), because we conclude, *infra*, that application of the fifth *Iannelli, supra*, criteria completely disposes of this issue.

The fifth and dispositive *Iannelli* criteria is whether or not the substantive offense that the accused was charged with, i.e. transfer of cocaine, requires *concerted* criminal activity (a plurality of criminal agents).

In determining the answer to this question we are required to look to the wording, definitions, and elements of the substantive law violated, rather than to the actual facts of the particular offense as charged. *United States v. Previte*, 648 F.2d 73, 78 (1st Cir. 1981), *United States v. Ohlson*, 552 F.2d 1347, 1349 (9th Cir. 1977). *See also, Iannelli v. United States, supra*, 420 U.S. at 780 and 785 n. 17, 95 S.Ct. at 1290–1291 and 1293–1294 n. 17, 43 L.Ed.2d 624 and 627 n. 17, *United States v. Shelton*, 573 F.2d 917, 919 (6th Cir. 1978), *United States v. Sperling*, 560 F.2d 1050, 1054–1055, (2nd Cir. 1977), and *United States v. Pacheco*, 489 F.2d 554, 559 (5th Cir. 1974). *But cf. People v. Davis*, 408 Mich. 255, 290 N.W.2d 366, 370, (1980), (Kavanagh, Justice (For affirmance)).

■ Concerted criminal activity requires criminal culpability on the part of *all* parties necessary to the "concerted criminal activity." *United States v. Previte, supra*, at pp. 76, 77 n. 1, and 78 n. 3 (1st Cir. 1981). *See also, Iannelli v. United States, supra*, 420 U.S. at 779 and 785, 95 S.Ct. at 1290 and 1293, 43 L.Ed.2d at 623 and 627, *Callanan v. United States*, 364 U.S. 587, 593–594, 81 S.Ct. 321, 325, 5 L.Ed.2d 312, 317, and *United State: v. Pacheco*, 489 F.2d 554, 557–559 (5th Cir. 1974).

If, then, the substantive Article 134 offense of transferring cocaine can, under *any* circumstances, be consummated without a

---

1. *See*, however, our discussion of *executive* in-      tent at pp. 516–517, *infra.*

criminally culpable transferee, the Wharton Rule is inapplicable. And, the general principle that a conspiracy and the substantive offense that is its immediate end do not merge upon proof of the latter would control our decision in this case.

There is, unfortunately, very little precedent, military or civilian, for determining whether proof of a transferee's criminal culpability is a necessary element of a transfer offense. While a number of military cases, by upholding transfer and sale convictions to transferees and buyers that were in reality undercover government agents, have apparently presumed that criminal culpability on the part of the receiver is not a necessary element of these offenses, they have not set forth their rationale for this decision. *United States v. Sexton*, 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974), *United States v. Fortney*, 12 M.J. 987 (A.F.C.M.R.1982), *United States v. Vandenheuvel*, 10 M.J. 591 (N.C.M.R.1980), *United States v. Henley*, 9 M.J. 781 (A.F.C. M.R.1980), *United States v. Valles-Santana*, 2 M.J. 1049 (A.C.M.R.1976), *United States v. Williams*, 2 M.J. 1041 (A.C.M.R.1976), *United States v. Merchant*, 2 M.J. 334 (A.F.C.M. R.1976), *United States v. Ortiz-Negron*, 1 M.J. 627 (A.C.M.R.1975). *But cf. dicta, United States v. Osthoff, supra.*

Because transfer is an Article 134 offense, examination of its legislative history is virtually fruitless. Air Force Manual 111–2, Court-Martial Instructions Guide, 15 October 1971 sets forth the elements of the offense as:

(a) That, at the time and place alleged, the accused transferred a habit-forming narcotic drug, to wit: cocaine;

(b) That such transfer by the accused was wrongful; and

(c) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

A.F.M. 111–2, Chapter 3, Instruction 145, p. 79.

2. The corresponding Army instruction that specifies elements of transfer offenses, is virtu-

Neither the Air Force or Army[2] instruction manuals make any effort to define the term "transfer" as used in their respective instructions delineating the elements of transfer offenses.

Our research reveals the sole federal statutory definition of "transfer" in a drug context, to have been:

The term "transfer" or "transferred" means any type of disposition resulting in a change of possession but shall not include a transfer to a common carrier for the purpose of transporting marihuana.

Internal Revenue Code of 1954, ch. 39, sec. 4761, subpara. (4), 68A Stat. 566 (repealed 1970) (originally enacted as the Marihuana Tax Act of 1937, Pub.L.No.238, subpara. (e), 50 Stat. 551).

Discussing a case in which the accused was charged with violation of this particular statute as a "crime and offense not capital" under clause 3 of Article 134, U.C. M.J., the Court of Military Appeals said:

Section 4761, Title 26, U.S.C., defines the term "transfer" as used in the statute in question as follows:

\*　　\*　　\*　　\*　　\*　　\*

It is clear, therefore, Congress did not intend that a transfer necessitate a change of ownership. The language of the definition section itself indicates that a change of possession is sufficient to constitute a transfer as the term is used in the marijuana statute. Possession, of course, is not synonymous with title or ownership. Possession may be changed and at the same time title may be retained.... The words of a statute must be accorded the meaning naturally given them in ordinary usage. *Glickfield v. State*, 203 Md. 400, 101 Atl.2d 229. If the words used in the statute convey a clear and definite meaning, a court has no right to look for or impose a different meaning. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself. *United States v. Dickenson*, 6 USCMA

ally identical to Air Force instruction 145, as quoted in the text.

438, 20 CMR 154. We conclude that accused's action in passing his marijuana cigarettes to others for partial consumption by them constituted a "transfer" within the meaning of sec. 4742 (a) Title 26, USC, as a "type of disposition resulting in a change of possession."

*United States v. Blair*, 19 U.S.C.M.A. 161, 163, 27 C.M.R. 235, 237 (1959).

This Court recognizes *Blair, supra.,* is distinguishable from the case at bar in that: (1) it deals with violations of the statute from which our statutory definition of "transfer" was extracted; and (2) its specific holding extends only to drug transfers in which the "transferee" is, in fact, criminally culpable. Nevertheless, the rationale and definitions that underlie this case's specific holding are equally applicable to Article 134, UCMJ, drug transfer offenses. In fact, according to the notes of the joint services working group that prepared the 1968 Manual for Courts-Martial, the reason both a specification form and a prescribed maximum punishment for drug transfer offenses was included for the first time was because:

> Based on past decisions it was considered appropriate to add ... transfer (*United States v. Blair*, 10 USCMA 161, 27 CMR 235 (1959)) to the drug and marihuana offenses for which a punishment is prescribed.

*Analysis of Contents, Draft Manual for Courts-Martial, United States,* 1968, U.S. Government Printing Office: 1967 0–274–410, pp. IV, V, 113, and 250.

Clearly, the Manual's drafters intended the term "transfer" to be defined in accordance with the definition of that word provided, within *Blair, supra.* Also, such a definition comports with the only existing state court definition of the term used in a drug context. The New Mexico Court of Appeals, adopting the term's definition as provided by Black's Law Dictionary (4th Ed., 1950), says " 'Transfer' [when used in a drug context] means making over the possession or control." *State v. Medina,* 87

N.M. 394, 534 P.2d 486 (N.M.App.1975) and *State v. McHorse,* 85 N.M. 753, 517 P.2d 75 (App.1973).

We are left, then, only to determine whether an individual gaining possession or control of a particular substance *must know the identity of the substance* over which he or she has taken possession or control, before a transferor can actually be said to have completed a "disposition resulting in a change of possession or control."

■ The public policy that prohibits "transfer" of a drug to another person is not aimed solely at discouraging criminals from providing drugs to one another; rather, it is even more directly aimed at the protection of innocent victims of drug dealers who, without such prohibitions, might frequently not only come into unwitting possession of such illicit and harmful substances, but through unwitting use of the substances might become dependent upon them.

■ While "candymen" distributing free "candy" to elementary school children in order to create young consumer addicts for future "candy" narcotic sales stand as a classic example in a civilian context of the latter, in a military setting, the sophisticated responsibilities of today's airmen and soldiers make the havoc that would result from similar distributions, whether by enemy agents or domestic drug entrepreneurs, to military personnel, entirely unacceptable. Ergo, public policy considerations make every bit as strong a case for protecting innocent military drug transfer recipients, as they do for protecting innocent civilian drug transfer recipients.

■ Concluding, then, that criminal culpability on the part of a transferee is *not* an element of the offense of transferring drugs, we hold the Wharton Rule to be inapplicable to Article 134, UCMJ, drug transfer offenses. Consequently, a drug transfer and a conspiracy to commit the identical drug transfer are separately chargeable and punishable offenses.[3]

---

**3.** Despite this ruling, we presume that continued sound prosecutorial discretion will prevent such charging in a majority of cases.

## II

The gist of the crime of conspiracy as defined by the statute is the agreement or confederation of the conspirators to commit one or more unlawful acts "where one or more of such parties do any act to effect the object of the conspiracy."

\* \* \* \* \* \*

[W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. [Citations omitted.]

*Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101–102, 87 L.Ed. 23, 28 (1942).

■ Because the principles of *Braverman, id.*, are equally applicable to a single conspiratorial agreement to commit multiple violations of a single statute, *United States v. Kissel*, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168 (1910), *United States v. Kidd*, 13 U.S.C.M.A. 184, 32 C.M.R. 184 (1962), *United States v. Rolison*, 32 C.M.R. 580, (A.B.R.1962), the continuing conspiratorial agreement, upon which both conspiracy convictions here were based, constitutes but a single offense. Although each of the charged specifications related to a separate conversation concerning distinct substantive offenses, both stemmed from a single, initial, conspiratorial agreement. Consequently, despite the fact that the second specification's allegation was relevant to and supported the allegation contained in the first, it stated the identical offense. Clearly Charge I, Specification 2, constituted a multiplication of charges and should have been dismissed.

Appellate defense counsel urge that the military judge's failure to *sua sponte* dismiss this Specification prejudiced the accused by: (a) denying him an adequate providency hearing; (b) failing to establish that the accused was not misled when he entered his pretrial agreement into believing the maximum imposable punishment would be based upon two conspiracy offenses rather than one; (c) precluding the possibility that the military judge might have meted out, or the convening authority might have approved a less severe sentence based upon one, rather than two conspiracy convictions; (d) denying him Constitutional protections against multiple prosecutions for the same offense; and (e) precluding the possibility that the convening authority might have approved a less severe sentence based upon one, rather than two conspiracy convictions.

■ Prior to accepting the accused's guilty pleas, the military judge advised the accused that because he deemed the two conspiracy specifications to be multiplicious for sentencing purposes, the maximum imposable punishment would be limited to 20 years (the maximum punishment authorized for one of the two conspiracy specifications plus the substantive offense). Both parties having readily agreed to this determination, we find defense contentions (a), (b), and (c) to be meritless. Further, if, in view of this finding, we at this time, prior to finalization of any conviction based upon the initial multiplication of charges, dismiss Charge I, Specification 2, the accused will have suffered no discernable prejudice as a result of defense contention (d).

## III

■ The sole remaining contention of the accused appears to be meritorious. The convening authority's staff judge advocate failed to inform the convening authority that one of the accused's three convictions had been deemed multiplicious for sentencing purposes by the military judge, and that consequently it could not be considered by him in deciding whether to approve the adjudged sentence. Additionally, the con-

vening authority was not informed of the maximum authorized punishments under the MCM either for the offenses of which the accused was convicted, or for the offenses for which he could be punished.

Recognizing the vast expanse of responsibilities vying daily for a convening authority's attention, we are unwilling to engage in any presumption that, in addition to reading the entire Review of the Staff Judge Advocate and the Clemency Evaluation Officer's Report, this particular convening authority so carefully read this particular Record of Trial as to have recognized the full import of a particular sentence buried in its middle. Consequently, we conclude that the accused was prejudiced by these omissions from the Review of the Staff Judge Advocate.

Having examined the entire record of trial, each error assigned by appellate defense counsel, and the Government's response thereto, we conclude that the approved findings as to Charge I and Specification 1 thereof, and Charge II and its Specification are correct in law and fact, but the approved finding as to Specification 2 of Charge I is incorrect. Additionally, we conclude that, although the accused suffered no prejudice as to his adjudged sentence by virtue of the military judge's determination that Specifications 1 and 2 of Charge I were multiplicious for sentencing purposes, he was prejudiced when the convening authority approved that sentence without adequate advice concerning the status of these charges from his staff judge advocate.

Accordingly, we dismiss Specification 2 of Charge I and affirm the remaining findings of guilty. Having done so, we reassess the sentence approved by the Convening Authority, *United States v. Leader*, 13 M.J. 36 (C.M.A.1982), and find it nonetheless appropriate. The remaining approved findings and the approved sentence are

AFFIRMED.

HODGSON, Chief Judge, KASTL, Senior Judge, HEMINGWAY and RAICHLE, Judges, concur. POWELL, Senior Judge, absent.