# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Washington, DC

## UNITED STATES

### v.

## George M. PARADA
### Aviation Electrician's Mate Third Class, U.S. Coast Guard

## CGCMS 24149

## Docket No. 1100

## 18 January 2001

Special Court-Martial convened by Commander, Coast Guard Group Astoria. Tried at Astoria, Oregon on 9 April 1997.

| | |
|---|---|
| Military Judge: | LCDR William Shelton, USCG |
| Trial Counsel: | LCDR John C. Odell, USCG |
| Assistant Trial Counsel | LT Kelly A. Boodell, USCGR |
| Civilian Defense Counsel: | Dan Hyatt, Esquire |
| Detailed Military Defense Counsel: | LT Brent Pope, JAGC, USNR |
| Substitute Detailed Military Defense Counsel: | CDR Albert A. Abuan, JAGC, USN |
| Appellate Defense Counsel: | LT Sandra K. Selman, USCGR |
| Appellate Government Counsel: | LT Benes Z. Aldana, USCGR |

## BEFORE
## PANEL TWO
## BAUM, KANTOR & McCLELLAND,
### Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by a special court-martial, military judge alone. He was convicted of the following offenses pursuant to guilty pleas entered in accordance with a pretrial agreement: one specification of conspiracy to distribute marijuana in violation of Article 81 of the Uniform Code of Military Justice (UCMJ), and two specifications of wrongful distribution of marijuana in violation of Article 112a, UCMJ. The court sentenced Appellant to confinement for two months, reduction to pay grade E-2, and a bad-conduct discharge (BCD). The convening authority, in consonance with the pretrial agreement, approved the adjudged sentence, but suspended, for six months from the date of trial, all confinement in excess of thirty days.

Before this Court, Appellant assigned one error: that the military judge abused his discretion by admitting into evidence a local newspaper's account of the offenses and Appellant's arrest, which also referred to the Coast Guard's "zero tolerance" policy toward drugs. Trial counsel offered this article during sentencing as a matter in aggravation evidencing the effect of the offenses on the small community of Seaside, Oregon. Appellant contends that the evidence was irrelevant, inadmissible hearsay, and tainted the proceedings with unlawful command influence by its reference to Coast Guard drug policy. We reject this assignment in its entirety. The article was relevant aggravation evidence bearing on the impact of Appellant's offense as discrediting the Coast Guard in the eyes of the civilian community. We do not believe the passing reference to the Coast Guard's "zero tolerance" policy in the article conveyed information that amounted to command influence. In any event, that information had no prejudicial effect in this trial by judge alone.

Our review of the record pursuant to Article 66(c), UCMJ, has yielded other concerns, however, which prompted our ordering supplemental briefs on the following issues: (1) whether the specification under Article 81, UCMJ, for which Appellant was found guilty, was a misuse of the conspiracy charge as contemplated by *U. S. v. Crocker*, 18 M.J. 33, 40 (C.M.A. 1984) and Manual for Courts-Martial (MCM) Part IV, ¶5c(3) (1995); (2) was Appellant denied effective representation, to the prejudice of his substantial rights, during the period after trial before the convening authority acted; (3) was there a period when Appellant was without any representation at all in contravention of *U.S. v. Leaver*, 36 M.J. 133 (C.M.A. 1992), *U.S. v. Moseley,* 35 M.J. 481 (C.M.A. 1992), and *U.S. v. Palenius,* 2 M.J. 86 (C.M.A. 1977), to the prejudice of his substantial rights; and (4) did the convening authority abuse his discretion, to Appellant's substantial prejudice, by denying additional time requested by counsel to submit matters for consideration? Counsel for both Appellant and the Government have submitted supplemental briefs and orally argued these issues to the Court. Any motions to file documents submitted with supplemental briefs and not previously acted upon are hereby granted.

We find that the charge of conspiracy was misused in this case. Further, we find that Appellant was prejudiced by a failure of representation after his trial in preparation and submission of clemency matters to the convening authority. We, therefore, take corrective action.

## THE CONSPIRACY CHARGE

The facts of the offenses, as gleaned from the providence inquiry, stipulation of fact, and uncontroverted testimony during pre-sentencing proceedings, are as follows. Appellant had a telephone conversation with a friend of seventeen years in Montana, who asked Appellant if he could supply some marijuana. Appellant agreed to send about 10 grams of marijuana, priced at $180. Thereafter, he obtained 9.7 grams of marijuana and, following his friend's guidance, packaged it so as to hide the odor of marijuana, addressed the package to his friend's address, placed on it the return address of a local business picked at random from the phone directory, and delivered it to a local UPS site to be shipped. About eight weeks later, he made a similar agreement by telephone with his friend, and similarly packaged and delivered 10.4 grams of marijuana to the local UPS site to be shipped to his friend. In each case, Appellant's friend received the package. Unbeknownst to Appellant, however, at the time of the first shipment, the shipping clerk called the business listed as the return address for more

information, leading to discovery by local authorities of the contraband. Thereafter, these authorities orchestrated a sting operation with authorities in Montana, who induced Appellant's friend to arrange for the second shipment from Appellant.

Appellant contends, in a supplemental brief submitted upon our order for supplemental briefs, that the conspiracy specification was a Government misuse of conspiracy charging as contemplated by *U.S. v. Crocker*, 18 M.J. 33, 40 (C.M.A. 1984) and, MCM, Part IV, ¶5c(3) (1995 ed.). *Crocker*, a case involving convictions of wrongful transfer of cocaine and of conspiracy to possess and transfer cocaine, suggests that not every case of illegal drug distribution is a conspiracy. Wharton's Rule[1] provides that where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime, conspiracy cannot be maintained. *Crocker*, 18 M.J. at 37, citing *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), and *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). Correspondingly, the MCM provides, "There can be no conspiracy where the agreement exists only between the persons necessary to commit such an offense." MCM, Part IV, ¶5c(3).[2] However, the Government may charge conspiracy when more than the two parties required to commit the substantive offense are involved. *Crocker*, 18 M.J. at 38. Furthermore, in *Crocker*, the court held that Wharton's Rule did not apply under the facts of that case. The court said:

> The concerted activity of [the two parties involved in the conspiracy in the case] extended over a period of several days; and by acting in unison, the two men were able to achieve results which they could not have achieved separately. Thus, to whatever extent Wharton's Rule is concerned with the presence of an added potential for evil resulting from concerted criminal action, [the conspiracy] should be treated as separate for purposes of findings and sentence.

*Crocker*, 18 M.J. at 39.[3]

The only other authoritative guidepost in military jurisprudence on the application of Wharton's Rule to drug offenses is *U.S. v. Earhart*, 14 M.J. 511 (AFCMR 1982). In that case, the accused agreed to supply cocaine to a friend. The agreement contemplated multiple transactions; one transfer to the friend occurred, and a second transaction was started. The Air Force Court of Military Review held that Wharton's Rule did not apply because a criminal transfer of drugs does not require concerted criminal activity since criminal culpability on the part of a transferee is not an element of the offense of transferring drugs. *Earhart*, 14 M.J. 511, 516 (AFCMR 1982). The Court of Military Appeals "[had] difficulty … with this argument" in *Crocker*, 18 M.J. at 39, relying instead, as noted above, on

---

[1] Wharton's Rule is named after Francis Wharton, whose treatise on criminal law identified the doctrine and its rationale. For a detailed analysis of the Rule and its history, see *Iannelli v. United States*, 420 U.S. 770, 773-84 (1975).

[2] This provision of the MCM remains the same in the 2000 edition.

[3] *Crocker* has an alternative holding: Wharton's Rule does not apply because the conspiracy alleged there included possession as well as transfer of cocaine, and possession does not require concerted criminal action. *Crocker*, *supra*, 18 M.J. at 39-40.

"concerted activity … over a period of several days;" and the idea that "by acting in unison, the two men were able to achieve results which they could not have achieved separately." *Crocker*, *supra*, 18 M.J. at 39. The same court affirmed the Air Force court in a summary disposition "in light of *U.S. v. Crocker*, 18 M.J. 33 (C.M.A. 1984)." *U.S. v. Earhart*, 18 M.J. 421 (C.M.A. 1984). From this we infer that application of Wharton's Rule to drug offenses is a highly fact-dependent determination in which the extent of the enterprise in time and reach are prime considerations.

The present case, by contrast with the *Crocker* and *Earhart* cases, involves two isolated incidents of distribution, with no indication that the recipient would further distribute the marijuana he received from Appellant. Furthermore, we are mindful of "the abuse and misuse of conspiracy charges" to which *Crocker* calls attention. 18 M.J. at 40. Expanding on this theme, the *Crocker* court went on:

> Because Wharton's Rule helps prevent the misuse of conspiracy charges, it should not be applied grudgingly when only the same two parties are involved.
>
> Paragraph 26*b* of the Manual for Courts-Martial [(1969)] states that "[o]ne transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person," and excessive use of conspiracy charges contravenes this direction. *Cf. U.S. v. Sturdivant*, 13 M.J. 323 (C.M.A. 1982). Therefore, even though transfers of contraband may fall outside the scope of Wharton's Rule because concerted criminal action is not required, [citations omitted], we do not believe that every routine transfer of a drug should lead to preferring a charge of conspiracy to transfer that drug.

*Crocker*, 18 M.J. at 40. As to paragraph 26*b* of the Manual for Courts-Martial (1969), the corresponding citation in the more recent editions of the MCM (1995 and 2000 eds.) is RCM 307(c)(4), Discussion.

We think these comments are apposite here. We find Charge I in this case to be a misuse of conspiracy, a needless "piling-on" of charges, in the words of *U.S. v. Foster*, 40 M.J. 140 fn. 4 (C.M.A. 1994). Accordingly, we will dismiss that charge and its specification.

## POST-TRIAL REPRESENTATION

At trial on 9 April 1997, Appellant was represented by a civilian defense counsel (CDC), and by detailed counsel who acted as assistant defense counsel (DDC1). The record was authenticated on 4 June 1997. According to a DD-214 submitted by appellate defense counsel, DDC1 was released from active duty on 7 June 1997. From post-trial materials attached to the record, the following chronology emerges:

23 June  Staff Judge Advocate's Recommendation (SJAR) pursuant to RCM 1106 is

|  |  |
|---|---|
|  | signed and mailed to Appellant and counsel. |
| 1 July | New defense counsel (DDC2) is detailed and acknowledges receipt of SJAR. |
| 2 July | DDC2 requests 20-day extension of time to respond. |
| 3 July | Convening authority grants extension of time to respond to 21 July. This amounts to a ten-day extension. |
| 9 July | DDC2 explicitly requests extension of time to respond to 31 July, noting that he has no contact information for Appellant. |
| 10 July | SJA's office supplies contact information to DDC2. |
| 11 July | Convening authority reiterates extension of time only to 21 July. |
| 14 July | Appellant's letter to convening authority, describing background of his decision to violate the law and apologizing; letter is considered by convening authority prior to action on case. |
| 17 July | DDC2 requests ten more days to respond, stating that Appellant has retained his trial CDC to handle post-trial matters as of 16 July, but that CDC is out of office presently and for the next few days. |
| 17 July | Convening authority grants extension of time to 23 July. |
| 23 July | CDC requests meeting with convening authority. |
| 23 July | Convening authority denies meeting, states time to respond extends to midnight. |
| 25 July | Convening authority action on case; nothing further has been submitted. |

RCM 1105 provides that an accused may submit matters to the convening authority, in an effort to affect the convening authority's action on the case. RCM 1105(a), (b). The deadline for such a submission is the later of 10 days after a copy of the record of trial or the SJAR, or any addendum thereto, is served on the accused. This deadline may be extended for not more than 20 additional days. RCM 1105(c)(1). RCM 1106, providing for a recommendation by the Staff Judge Advocate (the SJAR) to the convening authority before the latter acts on the case, also provides for a defense response to that recommendation. RCM 1106(f)(4). The deadline for this submission is, similarly, the later of 10 days after service on counsel of the record of trial or the SJAR, which may be extended for up to 20 additional days. RCM 1106(f)(5). Both of these opportunities for submissions are important. "It was in recognition of this importance, as well as of the crucial quality of the convening authority's action on an accused, that the *right* to legal representation at that stage was established." [emphasis in original] *U.S. v. Hickok*, 45 M.J. 142, 144 (1996).

The court in *Hickok* went on to lay out the consequences of deficiencies in post-trial representation:

> If a defense counsel is absent for purposes of accepting service of the SJA's recommendation and responding thereto, the accused thereby has been deprived of his right to defense counsel at that important stage. As Judge Gierke wrote in his concurring opinion under analogous circumstances in *U.S. v. Leaver*, 36 M.J. 133, 136 (C.M.A. 1992):

Because a court-martial sentence is inchoate until approved by the convening authority, the convening authority's action is an integral part of the sentence process. Denial of assistance of counsel during this critical phase of the sentencing process "is legally presumed to result in prejudice." [citations omitted]

\* \* \*

On the other hand, if counsel who has the legal responsibility to protect the accused's post-trial interests is present, it cannot be said that the accused has been deprived of his right to counsel. Instead, any error that occurs in connection with that counsel's performance of his duty of representation or from a procedural error affecting counsel's ability to meet this responsibility appropriately can be tested for prejudice.

*Hickok*, 45 M.J. at 145.

In a companion case to *Hickok*, *U.S. v. Miller*, 45 M.J. 149 (1996), these principles were applied to a case in which the accused's trial defense counsel left active duty after trial. A substitute counsel was detailed in anticipation of the departure of trial defense counsel, but the substitute counsel never established an attorney-client relationship with the accused. The court held:

that counsel who had the legal responsibility to protect appellant's post-trial interests was present and that the error of serving substitute counsel, who was not "counsel for the accused" in the sense of first having entered into an attorney-client relationship, can be tested for prejudice.

*Miller*, 45 M.J. at 151.

Next, *U.S. v. Howard*, 47 M.J. 104 (1997) held:

For all cases … asserting that substitute counsel failed to establish an attorney-client relationship, an appellant must make the same showing as required by *Chatman* [*U.S. v. Chatman*, 46 M.J. 321 (1997)] as to what he or she would have said in response to the SJA's recommendation.

*Howard*, 47 M.J. at 107.

However, where an accused is wholly without counsel at this stage, prejudice is still presumed. *U.S. v. Johnston*, 51 M.J. 227 (1999).

Our case is like *Miller* in that counsel (DDC2) accepted the SJAR without having formed an attorney-client relationship with Appellant. Indeed, DDC2 was apparently unable to contact Appellant

until several days later. The case is unlike *Miller* in that there was a gap between DDC1's release from active duty and detail of DDC2. Appellant contends that since there was a period during which he was unrepresented,[4] prejudice should be presumed. It is true that a defense counsel theoretically could have exerted some efforts on Appellant's behalf during the period from 7 June to 1 July, but at the most critical point, receipt of the SJAR, substitute counsel was appointed. We see no reason to presume prejudice under those circumstances. Instead, we will test for prejudice, in accordance with *Miller*, 45 M.J. 149, including looking for a showing as to what he would have submitted, in accordance with *Howard*, 47 M.J. 104.

On 10 July, DDC2 received contact information for Appellant. At that point, 11 days remained before the deadline to submit information. On 16 July, Appellant retained CDC to handle post-trial matters, but CDC evidently did not have time to discharge his duty within the remaining five days. The next day, DDC2 requested ten more days to respond. We cannot help thinking that DDC2 should have had a back-up plan to handle the matter himself,[5] considering that the convening authority had discretion to deny the extension. In fact, the convening authority granted two more days, but neither DDC2 nor CDC submitted anything.

It is often defensible for defense counsel to submit nothing to the convening authority. Here, however, Appellant's affidavit asserts that he had told both DDC1 and DDC2 that he wanted the convening authority to consider his medical records. Further, Appellant has shown what he would have submitted, in the form of several pages of his medical record. Appellant himself had written a letter to the convening authority providing further background to the offenses and expressing his remorse. The letter mentioned his medical problems, setting up the expectation of corroboration and further detail that could have been provided by a package built around the medical records. The record of trial includes much other material in extenuation and mitigation: evidence of an unblemished record over Appellant's more than nine years of service; testimony of two military supervisors and a civilian employer praising Appellant's performance, reliability, work quality, and value as a worker; his impending discharge because of High Year Tenure[6] and his consequent search for civilian employment; and numerous statements from former supervisors, co-workers and neighbors praising his industry, generosity, community spirit, heroic action, and other good qualities. Value surely would have been added by counsel's advocacy skills in preparing a coherent presentation of such matters. In short, we find a sufficient showing of prejudice to warrant relief. *See U.S. v. Howard*, 47 M.J. 104, 107-108. ("Based on this record, it appears that counsel could have made a presentation of some substance to the convening authority. * * * The issue before this Court is not whether such a presentation would

---

[4] According to Appellant's affidavit, he had a conversation with DDC1 after the latter was released from active duty, but there is nothing to indicate that DDC1 undertook to do anything to assist Appellant at that point.

[5] According to Appellant's affidavit, he had "at most two phone conversations with [DDC2] lasting a total of 10-15 minutes." His description of the conversation, discussing the possible contents of a clemency submission, suggests that an attorney-client relationship was formed; certainly there is nothing to suggest that Appellant rejected DDC2's services.

[6] High Year Tenure is a policy under which enlisted personnel who fail to advance within a certain number of years are discharged. For example, a third class petty officer must advance to second class petty officer by the tenth year of service to avoid being discharged.

have persuaded the convening authority to grant clemency in this case. Rather, it is whether there is a 'colorable showing of possible prejudice'".)

## CONCLUSION

We have concluded that the charge of conspiracy was misused in this case. Accordingly, the findings of guilty of Charge I and its specification are set aside, and they are dismissed. In addition, we have found a failure of post-trial representation, to Appellant's prejudice. The Court of Appeals for the Armed Forces directs us, in cases of error connected with a convening authority's post-trial review where the requisite showing of prejudice has been made, to "either provide meaningful relief or return the case to the Judge Advocate General concerned for a remand to a convening authority for a new posttrial recommendation and action." *U.S. v. Wheelus*, 49 M.J. 283, 289 (1998). We see nothing to be gained by returning this case to the convening authority at this late date. Instead, we deem it more appropriate to effectively eliminate the prejudice to Appellant from the failure of post-trial representation by exercising our authority under Article 66 (c), UCMJ, to approve only such part of the sentence as we determine should be approved. *U.S. v. Cook*, 46 M.J. 37 (1997).

This case is about two specifications involving the distribution of small quantities of marijuana. We take judicial notice that the Coast Guard frequently discharges low-ranking people who have committed minor drug offenses with a general discharge under honorable conditions. Hence this case, if it calls for a BCD, does not call strongly. Extenuation and mitigation, as noted above, are present in abundance.

The confinement and reduction-in-grade elements of the sentence provide almost no scope for meaningful relief. Disapproval of the BCD, as requested by Appellant, appears to be the appropriate disposition of this case. Having reviewed the record in accordance with Article 66, UCMJ, we set aside the BCD, and we affirm both the findings of guilty to Charge II and its two specifications under Article 112a, and the remainder of the sentence.

Judge KANTOR concurs.

BAUM, Chief Judge (concurring)

I concur with Judge McClelland and write separately only to express my view that the period when Appellant was without counsel, from 7 June 1997 to 1 July 1997, might very well have been the most critical point after trial. It was a time when Appellant was no longer confined and wanted to meet with counsel. Desired clemency materials could have been developed into a possibly persuasive R.C.M. 1105 submission with the assistance of counsel. Moreover, at that time there would not have been the kind of time constraints encountered after receipt of the staff judge advocate's recommendation. In a future case with factually similar deprivation of counsel, I would be inclined to presume prejudice. Here, that was unnecessary because we were able to find prejudice from the evidence of record. Appropriate authorities would be well advised to take

8

steps to ensure in all cases that there is uninterrupted post-trial representation in accord with *U.S. v. Palenius*, 2 M.J. 86, 93 (C.M.A. 1977).



For the Court

//s//
Joseph H. Baum
Chief Judge