**UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS**
**Washington, D.C.**

**UNITED STATES**

**v.**

**Brian J. LIND,**
**Seaman (E-3), U.S. Coast Guard**

**CGCMS 24290**

**Docket No. 1228**

**31 January 2007**

Special Court-Martial convened by Commander, Coast Guard Group/Marine Safety Office (MSO) Long Island Sound. Tried at Groton, Connecticut, on 7 June 2004.

| | |
|---|---|
| Military Judge: | CDR Timothy G. Stueve, USCG |
| Trial Counsel: | LT Christopher F. Coutu, USCG |
| Defense Counsel: | LT Brian A. Whitaker, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT D. Sean Baer, USCGR |

**BEFORE**
**PANEL THREE**
**McCLELLAND, BAUM, & KANTOR**
Appellate Military Judges

KANTOR, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was found guilty of the following offenses: one specification of wrongfully using ecstasy, a Schedule I controlled substance, and one specification of wrongfully distributing ecstasy, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a; one specification of conspiring to possess, use, and distribute ecstasy, in violation of Article 81, UCMJ, 10 U.S.C. § 881; and one specification of making a false official statement with intent to deceive, in violation of Article 107, UCMJ, 10 U.S.C. § 907. The military judge sentenced Appellant to reduction to E-1, forfeiture of $938.00 pay per month for four months, confinement for four months, and a

bad-conduct discharge. The Convening Authority approved the sentence as adjudged. The pretrial agreement had no effect on the sentence.

Before this Court, Appellant has assigned the following five errors:

I.  THE ADJUDGED SENTENCE OF FORFEITURES OF $938 PER MONTH FOR FOUR MONTHS EXCEEDED THE JURISDICTIONAL MAXIMUM OF THE SPECIAL COURT-MARTIAL.

II.  CHARGES I AND II CONSTITUTED AN UNREASONABLE MULTIPLICATION OF CHARGES.

III.  THIS COURT SHOULD CONSIDER THE UNREASONABLE AND UNEXPLAINED POST-TRIAL DELAY IN DETERMINING THE SENTENCE THAT SHOULD BE APPROVED.

IV.  DURING THE POST-TRIAL PROCESSING OF THIS CASE, APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HE WAS UNREPRESENTED AND NO SUBSTITUTE COUNSEL WAS DETAILED.

V.  APPELLANT'S SENTENCE IS INAPPROPRIATELY SEVERE AS IT IS HIGHLY DISPARATE FROM THE SENTENCE RECEIVED BY HIS CO-ACTOR IN A CLOSELY RELATED CASE.

**Forfeitures Exceeded Jurisdictional Maximum**

Regarding the first assignment of error, the Government concedes that the military judge committed error in adjudging forfeitures that exceeded the jurisdictional limit of the special court-martial. We agree. In this case, the military judge adjudged a sentence of forfeitures in the amount of $938.00 per month for a period of four months. He also adjudged a reduction to E-1. It clearly appears that the figure of $938.00 was based upon Appellant's paygrade of E-3 and basic pay of $1407.00 per month at the time of trial. R.C.M. 1003(b)(2) provides that where a sentence includes a reduction, "the maximum forfeiture shall be based on the grade to which the accused is reduced." Rule for Courts-Martial (R.C.M.) 1003(b)(2), Manual for Courts-Martial, United States (2005 ed.).[1] This Court may not affirm forfeitures in excess of $795.00 per month,

---

[1] The 2002 edition of the Manual for Courts-Martial was in effect at the time of the offenses resulting in the charges. However, the versions of the relevant portions in both the 2002 and 2005 editions are identical unless otherwise stated.

based on the adjudged reduction to E-1. *United States v. Esposito*, 57 M.J. 608, 609 (C.G.Ct.Crim.App. 2002). We will provide appropriate relief in the decretal paragraph below.

**Unreasonable Multiplication of Charges**

Resolution of this issue requires a brief examination of the facts supporting the two specifications under Charge I and the specification under Charge II. Appellant was assigned to Coast Guard Station Eaton's Neck, New York, in August 2002. On the morning of 16 April 2003, Appellant entered into an agreement with Seaman Apprentice (SA) Blake Zakutansky to purchase four pills of ecstasy from an acquaintance of SA Zakutansky in Bayonne, New Jersey. In order to make the purchase, Appellant drove his personal vehicle from Station Eaton's Neck to Bayonne. Prior to departing Station Eaton's Neck, SA Zakutansky provided specific driving directions to Appellant, which led him to Dennis Collins Park later that morning. At the park, he made contact with SA Zakutansky's friend and purchased four bluish-green pills for $80.00, pills which he believed to be ecstasy.

Following the purchase and in accordance with his agreement with SA Zakutansky, Appellant then drove to the off-base residence of SA Mary Rogeanbackus in East Northport, New York. When he arrived at the residence of SA Rogeanbackus, he was met by Jill Rogeanbackus, the civilian sister of SA Mary Rogeanbackus. A few minutes later, both SA Zakutansky and SA Rogeanbackus arrived at the residence. Thereafter, Appellant swallowed one of the four pills that he had placed on a counter. Although Appellant did not personally observe the other three individuals swallow the three remaining pills, he believes they did because no pills remained on the counter and the other three individuals discussed with him how the pills made them feel.

In Charge I, Specifications 1 and 2, Appellant pleaded guilty to wrongfully using and distributing a Schedule I controlled substance on or about 16 April 2003. In the sole specification under Charge II, he also pleaded guilty to conspiracy to possess, use, and distribute the same Schedule I controlled substance on or about 16 April 2003. Citing *United States v. Quiroz*, 57 M.J. 583 (N.M.Ct.Crim.App. 2002) (en banc), *aff'd*, 58 M.J. 183 (C.A.A.F. 2003) (summary disposition), Appellant claims that Charges I and II are an unreasonable multiplication

of charges, and constitute a prosecutorial abuse that is frowned upon in the Discussion section accompanying R.C.M. 307(c)(4). Appellant requests that Charges I and II be merged and that the sentence be reassessed

In *Quiroz*, the Navy-Marine Corps Court of Criminal Appeals set forth five non-exclusive factors to evaluate a claim of unreasonable multiplication of charges. They are:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?
(2) Is each charge and specification aimed at distinctly separate criminal acts?
(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
(4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?
(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of charges?

*Quiroz*, 57 M.J. at 585-86 (*quoting United States v. Quiroz*, 53 M.J. 600, 607 (N.M.Ct.Crim.App. 2000)). The Court went on to further note that, in considering the factors, it would grant appropriate relief if it found:

the 'piling on' of charges so extreme or unreasonable as to necessitate the invocation of [its] Article 66(c), UCMJ authority, . . . to affirm only such findings of guilty and so much of the sentence as [it finds] correct in law and fact and determine, on the basis of the entire record, should be approved.

*Id.* at 585. We consider the analysis in *Quiroz* to be appropriate and, thus, we will apply it.

Appellant objected at trial that Charges I and II were multiplicious for sentencing purposes under R.C.M. 1003(c)(1)(C). Thus, there is no issue of waiver. As to the second and third factors, we find that each specification under Charges I and II was aimed at distinctly different acts. It is long established in military jurisprudence that "conspiracy can be separately charged and punished along with any crime which may be the object of the conspiracy." *United States v. Johnson*, 58 M.J. 509, 511 (N.M.Ct.Crim.App. 2003) (*citing Iannelli v. United States*, 420 U.S. 770, 777, 95 S. Ct. 1284, 1289-90 (1975)); *United States v. Crocker*, 18 M.J. 33, 36 (C.M.A. 1984)). The rationale for this rule is that "[a] conspiracy, [which] is a partnership in crime . . . has ingredients, as well as implications, distinct from the completion of the unlawful project." *Id.* (*quoting Pinkerton v. United States*, 328 U.S. 640, 644, 66 S. Ct. 1180, 1182

4

(1946)).  By charging him accordingly, these three specifications do not misrepresent or exaggerate Appellant's criminal conduct.  Looking to the fourth and fifth factors, the number of specifications did not unreasonably increase Appellant's punitive exposure.  The maximum punishment limitations pertaining to special courts-martial capped Appellant's possible punishments.  Moreover, the punishment assessed was more favorable than the terms of his pretrial agreement.  Finally, based on the separate nature of the specifications, we see no evidence whatsoever of prosecutorial overreaching or abuse.

Accordingly, Appellant's allegation of an unreasonable multiplication of charges is denied.

### Unreasonable Post-Trial Delay

Next, Appellant seeks relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c), for unreasonable and unexplained post-trial delay.  He also argues that our higher court's recent decision in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), on due process violations caused by excessive post-trial delay should inform our evaluation of this issue under a purely Article 66 analysis.

Without question, Appellant has a "right to a timely review of his . . . findings and sentence."  *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37 (C.A.A.F. 2003).  This right to timely review is not dependent upon a request from the accused to the convening authority for diligent post-trial processing.  *United States v. Bodkins,* 60 M.J. 322, 322 (C.A.A.F. 2004); *United States v. Walters*, 61 M.J.637, 638-39 (C.G.Ct.Crim.App. 2005).  Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances reflected in the record, in exercising our responsibilities under Article 66(c), UCMJ.  *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).  In this case, 175 days elapsed between the time sentence was adjudged and the Convening Authority took action.

Appellant was tried and sentenced on 7 June 2004.  The record of trial was received by trial counsel from the court reporter twenty-one days later on 28 June 2004.  Trial counsel took sixteen days to review the record of trial before forwarding to both defense counsel and the

military judge on 14 July 2004. The record of trial was authenticated by the military judge on 29 July 2004, and received by trial counsel on 2 August 2002. Trial counsel did not cause the authenticated record of trial to be served on defense counsel until 4 October 2004, 119 days after sentencing. The Staff Judge Advocate (SJA) recommendation under R.C.M. 1106 was completed, sent to the Convening Authority, and received by trial defense counsel on 13 October 2004. The Convening Authority approved the SJA recommendation on 28 October 2004 but did not act until 30 November 2004, 175 days after sentencing. Complying with the requirements of the Coast Guard Military Justice Manual, the SJA, in his memorandum forwarding the record of trial, dated 20 December 2004, provided an accounting of the post-trial processing.

Appellant alleges post-trial delay at two particular points: (1) a sixty-two day time period from the date the authenticated record of trial was received by trial counsel to the date the R.C.M. 1106 SJA recommendation was provided to the Convening Authority, and (2) a thirty-two day time period from when the Convening Authority approved the SJA recommendation to when he signed the action and promulgating order. The SJA focused on the sixty-two day period of time and noted a heavy operational workload occasioned by the Republican National Convention that was taking place in Boston and the fact that trial counsel was also involved in a complex environmental crimes case.

The matter of unreasonable and unexplained post-trial delay has come before this Court on several occasions in the recent past. *See United States v. Gonzalez*, 61 M.J. 633 (C.G.Ct.Crim.App. 2005); *United States v. Walters*, 61 M.J. 637 (C.G.Ct.Crim.App. 2005); *United States v. Denaro*, 62 M.J. 663 (C.G.Ct.Crim.App. 2006). We are not unmindful of the varying responsibilities placed upon Coast Guard judge advocates. On a daily basis, they perform a variety of duties covering marine safety and security, law enforcement, and regulation of the merchant marine. Since September 11, 2001, these responsibilities have, in fact, dramatically increased. On the other hand, military justice responsibilities cannot be temporarily placed aside while other important matters are addressed. Had this been a case involving a number of complex issues and a bulky record of trial, the processing time might not have been unreasonable considering all factors. However, this case was litigated in one day and resulted in

a 177-page record of trial. Thus, while partially explained, we find the delay in this case excessive and unreasonable.

As a remedy, Appellant requests that we disapprove his bad-conduct discharge. While we are inclined to grant some relief in this case, several factors militate against such drastic action. First, the 175 days required to process this case is not overly excessive. The other activities being performed by trial counsel partially explain some of the reasons which allowed this case to exceed the 120-day "presumption of unreasonable delay" measure established in *Moreno* for future cases. *Moreno*, 63 M.J. at 142. This is also a case of drug use which deeply runs counter to the core values of the Coast Guard. Coast Guardsmen assigned to small boat stations such as Eaton's Neck may be required to put to sea for a variety of reasons and in a variety of weather. Doing so while under the influence of illegal drugs cannot be tolerated. We will balance these factors when exercising our sentence appropriateness review under Article 66(c), UCMJ.

## Ineffective Assistance of Counsel

Appellant claims he was denied the effective assistance of counsel during the post-trial processing of his case. Specifically, he alleges that his trial defense counsel informed him shortly after the trial that he was being transferred and that another attorney would contact him and assume representation. However, Appellant claims he was never contacted by substitute counsel. As such, Appellant claims that he was "wholly without counsel" during the post-trial phase of his court-martial and that prejudice should be "presumed." *See United States v. Parada,* 54 M.J. 730, 734 (C.G.Ct.Crim.App. 2001) (*citing United States v. Johnston,* 51 M.J. 227 (1999)). Appellant specifically claims that the lack of representation resulted in his failure to submit matters in clemency pursuant to R.C.M. 1105. Based on this failure, he submits that this Court should find that trial defense counsel's performance was deficient and that prejudice from such conduct should be presumed, thus satisfying the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984).

Whether or not Appellant was "wholly without counsel" is open to serious question, however. The record is silent on any action of defense counsel towards withdrawal from

representing Appellant. Conversely, there is evidence that trial defense counsel continued serving as Appellant's counsel. Appellant's trial was on 7 June 2004. On 27 July 2004, trial defense counsel not only reviewed the record of trial, but made corrections which were forwarded to the military judge prior to authentication. On 5 October 2004, after Appellant's release from confinement, trial defense counsel certified in his memorandum, dated 4 October 2004, that he received the authenticated record of trial. Finally, trial defense counsel certified that he was the detailed defense counsel when he acknowledged receipt of the SJA R.C.M. 1106 Advice on 13 October 2004. Accordingly, Appellant has failed to demonstrate that he was unrepresented by trial defense counsel during any portion of the post-trial phase of his trial. In fact, the weight of evidence shows that he was continually represented by his detailed defense counsel at least through mid-October 2004. Thus, the issue is whether or not the Appellant was prejudiced by the trial defense counsel's failure to submit matters of clemency.

In *United States v. Hickok,* 45 M.J. 142 (C.A.A.F. 1996); *United States v. Miller,* 45 M.J. 149 (C.A.A.F. 1996); *United States v. Howard,* 47 M.J. 104 (C.A.A.F. 1997); and *United States v. Parada,* 54 M.J. 730 (C.G.Ct.Crim.App. 2001), issues regarding the effectiveness of representation were raised based upon gaps in representation or failure to establish an attorney-client relationship during the post-trial phase of the court-martial. Where an accused is deprived of his right to the assistance of counsel during this phase of the court-martial, there is a legal presumption of prejudice. *Hickok*, 45 M.J. at 145 (*quoting Penson v. Ohio,* 488 U.S. 75, 88, 109 S. Ct. 346, 353 (1988) (*quoting Strickland v. Washington,* 466 U.S. 668, 692, 104 S. Ct. 2052, 2067 (1984))). That is not the issue presented by this case. Rather, where counsel is present but deficient, we test for prejudice. *Hickok*, 45 M.J. at 145. Appellant has attached to his Assignment of Errors and Brief an affidavit of his intended petition for clemency. (App. A to Appellant's Br.) In his petition, Appellant claims his drug use was a "one time" event and a "terrible mistake." In the time between the incident and his trial, he used his time productively to re-certify as a crewmember aboard the 41-foot utility boat and as a communications watchstander. He specifically asked that his bad-conduct discharge be disapproved.

We find that counsel was deficient in failing to contact Appellant regarding clemency. Appellant's intended clemency petition does present substantive reasons for clemency. *See*

*Howard*, 47 M.J. at 108 ("The issue before this Court is not whether such a presentation would have persuaded the convening authority to grant clemency in this case. Rather, it is whether there is a 'colorable showing of possible prejudice'"). We conclude that the deficiency warrants meaningful relief. *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998). We will provide such relief in the decretal paragraph below.

### Inappropriately severe sentence

Claiming his sentence was inappropriately severe, Appellant urges this Court to conduct a sentence comparison to that of his co-actor, SA Zakutansky, in accordance with *United States v. Lacy*, 50 M.J. 286, 287-88 (C.A.A.F. 1999). When an appellant shows that his case is "closely related" to another and where the two sentences are "highly disparate," the burden shifts to the Government to "show there is a rational basis for the disparity." *Id.* at 288.

Both Appellant and SA Zakutansky were tried by special court-martial for their actions surrounding the 16 April 2003 conspiracy to use, possess, and distribute four pills of ecstasy. SA Zakutansky was sentenced to confinement for 300 days and forfeiture of $750.00 per month for ten months. His pretrial agreement called for all confinement in excess of five months to be suspended for twelve months. Of great importance, he did not receive a punitive discharge as did Appellant. Thus, Appellant requests that his bad-conduct discharge be disapproved.

Sentence comparison should only occur "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Id.* (*quoting United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Appellant must first demonstrate the two cases are "closely related." If he satisfies that requirement, he must next show that the sentences are "highly disparate." Like Appellant, SA Zakutansky was convicted of two specifications of use and of conspiracy to use, possess, and distribute ecstasy. Appellant, however, was also convicted of distribution of ecstasy as well as making a false official statement. With these additional specifications, it cannot be said that the cases are "closely related." Corrective action based on disparate sentences is not warranted in this case.

**Decision**

We have reviewed the record in accordance with Article 66, UCMJ, 10 U.S.C. § 866. Upon such review, we have determined that the findings of guilty are correct in law and fact and they are affirmed. On the basis of all of the foregoing, we approve only so much of the sentence as extends to a bad-conduct discharge. Accordingly, the sentence of a bad-conduct discharge is affirmed.



For the Court,


Jane R. Lim
Clerk of the Court